Filed 7/25/16  Jones v. Nationstar Mortgage CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT JONES et al.,<br><br>  Plaintiffs and Appellants,<br><br>  v.<br><br>NATIONSTAR MORTGAGE, LLC et al.,<br><br>  Defendants and Respondents. | D067834<br><br><br>(Super. Ct. No. 37-2013-00049308-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Reversed.

The Welch Law Group and Eric M. Welch for Plaintiffs and Appellants.

Akerman, Justin D. Balser and Alicia Y. Hou for Defendants and Respondents.

In this case, the plaintiffs, Robert Jones and Gina Jones (the Joneses), allege a loan servicer, Nationstar Mortgage, LLC (Nationstar), was subject to the requirements of the Homeowner Bill of Rights (the HBOR) and Civil Code sections 2923.4-2913.7,[1] and

---

[1]    All further statutory references are to the Civil Code unless otherwise indicated.

failed to provide them with the information required by section 2923.6. As we explain more fully, the Joneses have stated a valid cause of action for violation of the HBOR.

In addition to claims under the HBOR, the Joneses alleged in the trial court common law causes of action growing out of their contention Nationstar agreed to provide them with a loan modification on the condition the Joneses provide Nationstar with financial documentation and information. The Joneses allege they provided documentation to Nationstar and were never advised that their submission was defective or insufficient; they further allege Nationstar had no intention of offering them a loan modification and that Nationstar's conduct gives rise to claims for fraud, negligent misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing. The facts alleged in the Joneses' second amended complaint (SAC) support these common law claims.

In light of the foregoing, the trial court erred in sustaining in part defendants' demurrer to the Joneses' SAC without leave to amend and thereafter granting defendants' motion for summary judgment with respect to the balance of the Joneses' claims. Accordingly, we reverse the judgment of dismissal entered by the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

A. 2006-2013

The Joneses purchased their home in 2006. SCME Mortgage Bankers, Inc. provided the Joneses with purchase money financing, which was memorialized in a $500,000 note executed by the Joneses and secured by a deed of trust. Mortgage

2

Electronic Registration Systems, Inc. (MERS) was initially named as beneficiary of the deed of trust. At some point after the Joneses purchased their home, defendant Aurora Bank FSB (Aurora), took over responsibility for servicing the loan. According to the Joneses, they made regular payments on the note; according to an employee of Aurora who examined Aurora's records, the Joneses made inconsistent payments.

On March 28, 2012, MERS assigned its interest in the Joneses deed of trust to Aurora. On June 6, 2012, Aurora caused the trustee under the deed of trust to record a notice of default. The notice of default stated the Joneses were $14,730.03 in arrears on the note.

On July 1, 2012, defendant Nationstar obtained the right to service the Joneses' note and deed of trust. According to both the Joneses and Nationstar, in September 2012, the Joneses spoke with a Nationstar employee about a loan modification. The record shows that on September 4, 2012, Nationstar sent the Joneses electronic facsimile (fax) correspondence, which included a loan modification application and asked that the Joneses return a number of financial records and financial information within 48 hours. The Joneses sent Nationstar a number of the documents Nationstar requested and, according to their later complaint, heard nothing from Nationstar until April 30, 2013, when Nationstar caused the trustee to record a notice of sale.

B. Trial Court Proceedings

On January 1, 2013, the HBOR became effective. In general, the HBOR imposes on loan servicers, such as Nationstar, an obligation to offer homeowners loan

3

modifications and other alternatives to foreclosure and to consider a homeowner's application for such relief in good faith; more particularly, the HBOR requires that loan servicers meet their loan modification and foreclosure alternatives obligation as a condition to their right to record or cause to be recorded notices of default and notices of sale under deeds of trust. (See §§ 2923.5, 2923.7, 2924.18.)

Shortly after Nationstar caused the trustee to record a notice of sale under the Joneses' deed of trust in April 2013, Robert Jones filed a complaint against Nationstar and Aurora. Later, in filing an amended complaint and in compliance with the trial court's order, Robert Jones added Gina Jones as a plaintiff. The trial court granted Robert Jones injunctive relief from the noticed sale and, following a demurrer sustained with leave to amend, the Joneses filed the SAC.

The SAC alleged a number of claims based on asserted violations of the HBOR and common law claims based on the Joneses' allegation that Nationstar had promised to give them a loan modification if they provided Nationstar with financial documents and financial information. Nationstar and Aurora demurred to the SAC. The trial court sustained the demurrer without leave to amend with respect to claims based on violations of the HBOR, which allegedly occurred before the effective date of the HBOR, January 1, 2013. The trial court overruled the demurrer with respect to (1) a claim based on an alleged violation of a statute that was in effect before January 1, 2013 and (2) the HBOR claims that were based on conduct that occurred after January 1, 2013.

The trial court also sustained without leave to amend common law claims based

4

on Nationstar's alleged promise to provide the Joneses with a loan modification; the court found those claims were barred by the fact the Joneses did not provide Nationstar with all the documents Nationstar requested in its fax and because the alleged promise to provide a loan modification was within the statute of frauds. The trial court overruled the demurrer with respect to the remaining common law claims for injunctive relief and declaratory relief.

With respect to the Joneses' remaining statutory and common law claims, Nationstar and Aurora moved for summary judgment or, in the alternative, summary adjudication. The trial court granted the motion for summary judgment, finding that the defendants had met their statutory duties and that the remaining statutory claims and related claims for equitable relief should therefore be dismissed. Accepting as admissible Nationstar's evidence with respect to the Joneses' payment history, the trial court also granted summary judgment with respect to a remaining breach of written contract claim. Thereafter, the trial court entered judgment dismissing the Joneses' complaint. The Joneses filed a timely notice of appeal.

## DISCUSSION

### I

In reviewing orders sustaining demurrers without leave to amend and orders granting summary judgment, our role is limited and well defined.

We review de novo an order sustaining a demurrer without leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) The issue is whether, assuming the truth of

5

all well-pleaded facts and those subject to judicial notice, the complaint alleged facts sufficient to state a cause of action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) We disregard contentions, deductions, or conclusions of fact or law. (*Ibid.*) " 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' " (*Ibid.*) However, if any one of the several grounds of demurrer is well taken, the judgment must be affirmed. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

In broadly outlining the law of summary judgment, the California Supreme Court stated: "If a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment. In such a case . . . the 'court should grant' the motion 'and avoid a . . . trial' rendered 'useless' by nonsuit or directed verdict or similar device." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855.) Importantly, we review orders granting summary judgment de novo. (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 139.)

6

II

As we indicated, the HBOR imposes on loan servicers duties they must fulfill before recording or causing to be recorded notices of default and notices of sale under deeds of trust.  In imposing these duties, the Legislature meant to prevent the abusive practice of " 'dual tracking,' " by which loan servicers, while considering borrowers' requests for loan modifications or other relief from foreclosure, simultaneously processed foreclosure on their homes.  (See *Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 752 (*Monterossa*); *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 904 (*Jolley*).)  "[O]n July 2, 2012, the California Legislature passed Assembly Bill No. 278 and Senate Bill No. 900 (2011-2012 Reg. Sess.), which have since been signed into law by the Governor.  These provisions address more pointedly the foreclosure crisis in our state through even greater encouragement to lenders and loan servicers to engage in good faith loan modification efforts.  [¶]  One of the targets of the legislation is a practice that has come to be known as 'dual tracking.'  'Dual tracking refers to a common bank tactic.  When a borrower in default seeks a loan modification, the institution often continues to pursue foreclosure at the same time.'  (Lazo, *Banks are foreclosing while homeowners pursue loan modifications*, L.A. Times (Apr. 14, 2011); see Sen. Floor Analyses, Conf. Rep. on Assem. Bill No. 278, as amended June 27, 2012, p. 3.)  The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it.  'Mortgage lenders call it "dual tracking," but for homeowners

7

struggling to avoid foreclosure, it might go by another name: the double-cross.' (Lazo, *Banks are foreclosing*.)" (*Jolley,* at p. 904, fn. omitted.)

Thus, in enacting the HBOR, the Legislature stated in section 2923.4, subdivision (a): "The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process."

Under the HBOR a loan servicer may not record or cause to be recorded a notice of default unless it has fully informed a homeowner of the opportunity to apply for a loan modification or other relief and may not record or cause to be recorded a notice of sale if a completed application for modification or other relief has been submitted and any appeal from the denial of the application has either been denied or the time for such appeal has expired. (See §§ 2923.5, 2923.6, 2924.18.)

Importantly, the HBOR requires, in section 2923.7, subdivisions (a) and (b)(1) that, when a borrower requests a foreclosure prevention alternative, a loan servicer must appoint a single point of contact for the borrower, who must communicate with the borrower with respect to the availability of foreclosure alternatives and the process by which the borrower must apply for available alternatives. Subdivision (b)(2) requires the point of contact be responsible for "[c]oordinating receipt of all documents associated

8

with available foreclosure prevention alternatives and *notifying the borrower of any missing documents necessary to complete the application*." (Italics added.) Subdivision (b)(3) further requires that a point of contact have access to information that permits the point of contact to: "timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative."

Violation of the obligations imposed by the HBOR give rise to claims for injunctive relief from foreclosure, damages, and attorney fees. (See *Monterossa*, *supra*, 237 Cal.App.4th at p. 753.)

We agree with the trial court's determination that the duties imposed by the HBOR did not arise until the law became effective on January 1, 2013. Nothing on the face of the statute indicates the Legislature intended that conduct which occurred before the statute became effective would be subject to the requirements of the statute. Such a retroactive application of the new duties created by the statute would be inherently unfair to loan servicers, who in good faith recorded notices of default and notices of sale before the HBOR was adopted by the Legislature, let alone became effective. Our conclusion that the statute only operated prospectively is consistent with the general rule that, in the absence of some clear expression by the Legislature, statutes do not have retroactive effect. (See *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1209.)

III

Nonetheless, we disagree with the trial court's determination, in ruling on Nationstar and Aurora's demurrer to the SAC, that the complaint did not state either a

9

valid claim for violation of section 2923.7 or for breach of contract.

A. Section 2923.7

Paragraph Nos. 154 and 155 of the SAC allege that in September 2012, a representative of Nationstar told Robert Jones that if Jones supplied Nationstar with financial documentation and information Nationstar would modify the Joneses' loan and their monthly payments would be reduced to between $1,800 and $2,000 a month. Nationstar then sent the Joneses a fax with an application for a loan modification, including a list of documentation the Joneses needed to provide to Nationstar. The SAC alleges that Robert Jones promptly faxed bank account and pay stub information to Nationstar and, the SAC alleges, thereby fulfilled the requirements of the loan modification application. The SAC further alleges Nationstar did not advise the Joneses that they needed to provide any further documentation to complete their application; instead, Nationstar recorded the notice of sale on April 30, 2013.

These allegations are sufficient to state a claim under section 2923.7, which we recognize did not become effective until January 1, 2013. However, as we read the SAC, as of January 1, 2013, the Joneses' request for a loan modification had neither been expressly approved or denied and the Joneses had not been advised of the status of their application or that their application was missing any documents. Admittedly, by its terms Nationstar's offer expired 48 hours after it was made because, although the Joneses provided Nationstar with some of the financial information required by Nationstar's fax, as Nationstar contends, the Joneses did not provide it with all the documentation it

10

required within the designated 48-hour period.

We would be willing to adopt Nationstar's apparent view that its offer to consider a loan modification had expired because the Joneses had not met the conditions of the offer within the 48-hour period Nationstar allowed, but for Nationstar's undisputed failure to communicate that important fact to the Joneses. In our view, Nationstar's failure to communicate the status of the September 2012 application has a direct bearing on Nationstar's obligations under section 2923.7, when those obligations arose on January 1, 2013.

On January 1, 2013, "[u]pon the request of a borrower," (*id*., subd. (a)), Nationstar had a duty under subdivision (b)(1) to advise borrowers such as the Joneses of any foreclosure alternatives available to them and the process by which they could obtain such relief, and a duty under subdivision (b)(2) to thereafter keep the Joneses advised as to the status of the application and the need to supply additional information. Had Nationstar promptly communicated to the Joneses the status of their September 2012 application, on January 1, 2013, it clearly would have fallen on the Joneses to avail themselves of the protections provided by the HBOR. However, according to the allegations of the SAC, Nationstar did not advise the Joneses about the status of their loan modification application and left the Joneses with the apparent impression their application was still pending. Thus, as of January 1, 2013, Nationstar was aware both that the Joneses had requested a foreclosure alternative and that it had not advised them of the status of that request. Given the remedial nature of the HBOR, and the particular

11

communications abuse it was enacted to address, we interpret these circumstances as giving rise to a request by the Joneses, as of January 1, 2013, for a foreclosure alternative within the meaning of section 2923.7 and a consequent duty on the part of Nationstar to meet the requirements of the statute.

We are persuaded to treat the Joneses' September 2012 loan modification application as a continuing request for relief, which gave rise to duties under section 2923.7 when it became effective on January 1, 2013, by a number of practical, as well as theoretical, considerations. First and foremost, as of January 1, 2013, Nationstar was plainly aware the Joneses were interested in a foreclosure alternative; thus, the Joneses fell squarely within the class of borrowers—those interested in a foreclosure alternative—entitled at that point to the protections of section 2923.7. Moreover, the practical effect of Nationstar's failure to communicate with the Joneses as to the status of their 2012 application arguably hindered the Joneses' ability to later employ the protections of the HBOR and make a formal request for a foreclosure alternative or otherwise act to protect their interest in their home. Requiring loan servicers to communicate with borrowers as to their rights, options, and the status of their applications for relief were of course the principal goals of the Legislature in enacting the HBOR. (See § 2923.4.) Thus, where, as here, the foreclosure process was initiated before the HBOR became effective, but was not yet complete on January 1, 2013, we believe the Legislature intended that after that date any pending foreclosures be governed by the new statute and its specific duties to communicate with borrowers interested in

12

avoiding foreclosure.

The Legislature's expectation that pending foreclosures would be governed by the terms of the HBOR, and that a loan servicer's prior conduct would be relevant in applying the statute to them, was expressly manifested in section 2923.6, subdivision (g), which states:  "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer."  Thus, by its terms, section 2923.6 expressly contemplates providing borrowers, such as the Joneses, against whom foreclosure proceedings were pending at the time the HBOR became effective, with the benefits of the statute.

In sum then, because we have interpreted the Joneses' unanswered application for a loan modification as a continuing request for a loan modification, the SAC alleges a violation of section 2923.7 when that statute became effective on January 1, 2013.

B.  Breach of Contract

The SAC alleges that the Joneses met the requirements of the loan modification offered by Nationstar and that Nationstar breached its agreement by, instead of giving

13

them the loan modification, recording a notice of sale.  For its part, Nationstar contends that the fax it sent the Joneses required more than the documents the SAC alleges the Joneses provided within the 48-hour period permitted by the offer.  Thus, Nationstar contends that the SAC concedes that the conditions of its offer were not met.

This brings us to the covenant of good faith and fair dealing, which implies in every contract an obligation that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement."  (See *Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.)  Importantly, the precise nature and extent of the duty imposed by the implied promise of good faith and fair dealing in any particular contract depends upon the expectations of the parties and the purposes of the contract.  (See *Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 814; *Austero v. National Cas. Co.* (1978) 84 Cal.App.3d 1, 28 (*Austero*).)  Here, of course, the purpose of the alleged contract was to prevent the loss of the Joneses' home to foreclosure.  In somewhat similar circumstances, the court in *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 75-76 (*Lueras*) found that allegations that a lender failed to fully and accurately advise a borrower with respect to a loan modification application supported a claim the lender had breached the covenant of good faith and fair dealing. " 'The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another.  Such power must be exercised in good faith.' "  (*Id.* at p. 76.)  Here, Nationstar had a great deal of discretionary power over its processing of the Joneses' effort to obtain a loan

modification; its failure to respond in any manner once the Joneses provided financial information in support of a modification application plainly implicates the covenant of good faith and fair dealing.  (See *id.* at pp. 75-76.)

Of additional significance here, within months after the contract the Joneses allege was made, the Legislature imposed on loan servicers considering identical applications for loan modifications the duty to notify borrowers about missing documents, the status of their modification applications, and a requirement that time frames be reasonable.  (See §§ 2923.6, subd. (h) & 2923.7, subd. (b)(2).)  These legislative determinations as to the conduct required of loan servicers in dealing with borrowers are relevant in considering whether Nationstar was acting in good faith in giving the Joneses only 48 hours in which to produce documents and thereafter failing to advise them about considering their application for a loan modification.  (See *Jolley*, *supra*, 213 Cal.App.4th at p. 905.)

In *Jolley*, as here, although the relevant conduct by a lender preceded the effective date of the HBOR, the court found the requirements of the HBOR were relevant in determining whether the lender had a duty to protect the borrowers' interests.  "Of course, [the] provisions [of the HBOR] do not apply to our case.  The question for our purposes is whether the new legislation sets forth policy considerations that should affect the assessment whether a duty of care was owed to [the borrowers] at that time.  We think it does." (*Jolley, supra*, 213 Cal.App.4th at p. 905.)  In reaching that conclusion, the court in *Jolley* also relied on a number of district court cases that imposed on lenders a duty of

15

care in dealing with borrowers who were seeking a loan modification. (*Id.* at pp. 905-906; but see *Lueras*, *supra*, 221 Cal.App.4th at pp. 65-66 [enactment of the HBOR does not support imposition of duty of care].)

In light of the holding in *Lueras* and the policy considerations manifest in the HBOR, the lack of any response to the Joneses' application as alleged in the SAC is sufficient to give rise to a claim that in handling the Joneses' application for a loan modification, Nationstar breached the covenant of good faith and fair dealing. Nationstar, of course, is free to demonstrate that, even if it did not meet the standards that, under the HBOR, now expressly govern its conduct, in dealing with the Joneses, it had good business reasons to insist on a 48-hour time limit and rely on the Joneses to conclude that they had not met the requirements of its offer. (See, e.g., *Austero*, *supra*, 84 Cal.App.3d at pp. 35-36.) Nonetheless, contrary to Nationstar's argument, the face of the SAC alleges a colorable claim that Nationstar breached the covenant of good faith and fair dealing and is liable for breach of contract.

We also disagree with the trial court's determination that, as a matter of law, the oral agreement the Joneses alleged was barred by the statute of frauds. We recognize that the statute of frauds governs agreements to modify mortgages and deeds of trust. (See *Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 552-553; §§ 2922, 1698, subd. (a).) Nonetheless, the SAC alleges complete performance by the Joneses of their obligations under the oral agreement and their reliance on their understanding they would be considered for a modification. It is well established that

16

complete or even partial performance by a party may satisfy the requirements of the statute of frauds, where a party may also be able to show detrimental reliance on the agreement. (See *Secrest*, at pp. 555-556.) Thus, the allegations of the SAC, if proved, could satisfy the statute of frauds.

C. Disposition of Demurrer

Because the SAC alleges a valid claim for violation of the HBOR, the trial court erred in sustaining without leave to amend the first, second, third and fourth causes of action that each seek relief for violations of the HBOR. Because the SAC alleges a valid breach of contract and breach of the covenant of good faith and fair dealing, the trial court also erred in sustaining defendants' demurrer with respect to the ninth, tenth and eleventh causes of action.

The trial court sustained defendants' demurrer to the seventh and eighth causes of action for fraud and negligent misrepresentation because it determined the Joneses had failed to supply Nationstar with all the documents required by way of the alleged contract. Because the Joneses' failure to provide more documentation may be excused by virtue of Nationstar's conduct, the trial court erred in dismissing these claims as well.

Because the valid causes of action that are set forth in the SAC might support an award of punitive damages, the trial court also erred in striking the Joneses' request for punitive damages.

IV

The trial court's order sustaining in part defendants' demurrer to the SAC did not

17

dispose of the Joneses' claims related to the notice of default recorded by Aurora in June 2012. With respect to the notice of default, the Joneses alleged that they were not in default and that Aurora had refused to accept payments they had tendered on the loan. The Joneses alleged this conduct gave rise to claims under the version of section 2923.5 in effect in 2012 and breach of the covenant of good faith and fair dealing.

Nationstar and Aurora moved for summary judgment with respect to these claims and supported its motion by way of records from Aurora, which they argued established that the Joneses were in default when the notice of default was recorded and that Aurora had met its notice obligations under the prior version of section 2923.5 to contact the Joneses before recording the notice of default. Admission of the records were supported by way of a declaration from an employee of Nationstar.

The Joneses responded to the motion for summary judgment (1) by submitting deposition testimony from the Joneses, which, in a very general manner, contradicted the Aurora payment records and (2) by objecting to admission of the Aurora payment records. The Joneses also submitted letters from Robert Jones to Aurora, which conceded his payments were in arrears but objected to the fact that Aurora had returned payments he had attempted to make. The letters contended that, with credit for the returned payments, the balance due set forth in the notice of default was inaccurate.

At the very least, this record leaves a factual question with respect to whether, in light of the Joneses' attempts to make payments, Aurora fulfilled its obligations under the former version of section 2923.5, subdivision (a)(2), which required that before filing a

18

notice of default, a "mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."

In sum, the trial court also erred in granting defendants' motion for summary judgment.

DISPOSITION

The judgment is reversed.  The Joneses to recover their costs on appeal.


BENKE, Acting P. J.

I CONCUR:


McDONALD, J.


I CONCUR IN THE RESULT:


AARON, J.