Filed 1/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| KAZUKO K. ARTUS,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GRAMERCY TOWERS<br>CONDOMINIUM ASSOCIATION,<br><br>        Defendant and Respondent. | A147297<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-14-541320) |

After members of a condominium homeowner's association (HOA) voted by a very substantial majority to eliminate the practice of cumulative voting, plaintiff Kazuko K. Artus, who owns three units in the Gramercy Towers condominium development, sued the HOA. Artus claimed, among other things, that aspects of the election violated provisions of the Davis-Stirling Common Interest Development Act (Davis-Stirling Act; Civ. Code, § 4000 et seq.).[1] She obtained preliminary injunctive relief on the basis of two of her statutory claims, staving off a board election under the new, direct vote rule. After a three-day bench trial, however, the trial court ruled against her on the merits. In the meantime, the HOA held a second election on the issue of cumulative voting, the outcome of which was the same as the first—approval of direct, rather than cumulative, voting by a very substantial margin. Finding that the second election addressed "whatever valid objections [Artus] may have had to the first" and the HOA had made good faith efforts to comply with the law, the court denied permanent injunctive and declaratory relief on that basis, as well.

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

1

Artus challenges the trial court's ultimate rejection of her two statutory claims on which she obtained preliminary injunctive relief and claims she is entitled, at the very least, to declaratory relief. However, we need not, and do not, reach the merits of her statutory claims, as we conclude the trial court did not, in any event, err in denying declaratory relief.

We additionally reject Artus' claim that, regardless of the ultimate outcome, she is entitled to statutory fees and costs under the reasoning of *Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747 (*Monterossa*), because she obtained preliminary injunctive relief. As we explain, unlike the California Homeowner's Bill of Rights statute at issue in *Monterossa* (§ 2924.12), neither the language of the Davis-Stirling Act, nor the legislative history of the fee provision Artus invokes, evidences any intent on the part of the Legislature to depart from well-established principles that fees and costs are ordinarily not granted for interim success, and that the prevailing party is determined, and fees and costs awarded, at the conclusion of the litigation.

We therefore affirm the judgment and the order denying statutory fees and costs.

## BACKGROUND

Gramercy Towers HOA manages and maintains a 260-unit condominium property in San Francisco and, as such, is subject to the provisions of the Davis-Stirling Act. Artus, who has both a Ph.D. in economics and a Juris Doctorate, owns three condominiums in the development.

The HOA is governed by a seven-member board. Prior to the instant litigation, the HOA's bylaws and election rules provided for cumulative voting, whereby a member "would receive a number of votes equal to the total number of directors to be elected and a member could, for example, choose to cast all her ballots for one candidate."[2] While the practice of cumulative voting was in place, Artus was elected to the board three times, in 2007, 2008, and 2013.

---

[2] Quoted material is from the trial court's statement of decision. Artus does not challenge the court's findings as to the operative facts.

2

The HOA first adopted election rules in 2007. "In general, there [are] two types of [HOA] elections: to choose directors or to decide issues. Where the election involved an issue to be decided[,] the Board always advised the membership of the Board's position on the question. The election rules specify that any member may ask to submit a written statement setting forth his or her position on any election." As a board member, Artus "personally participated in drafting these election rules . . . [and] therefore had intimate knowledge of both the rules and the custom and practice of the organization in how the rules were implemented for elections." (Italics & boldface omitted.)

Eventually, a number of board members wanted to amend the HOA bylaws and election rules to eliminate cumulative voting. Accordingly, in May 2014, the board adopted a resolution proposing elimination of the practice by a six-to-one vote, Artus casting the lone dissenting vote. The board scheduled an election on the issue for July 25, 2014.

The board notified the HOA membership of the proposed change and the date of the election. It also sent the membership, in addition to a ballot, a two-page, unsigned letter " 'solicit[ing] [member's] support for' " the proposed voting change and stating the board's reasons for proposing it. The letter posited six questions—(1) What is cumulative voting? What is direct voting?, (2) Why does Gramcery Towers have cumulative voting now?, (3) Why should we eliminate cumulative voting?, (4) What do other authorities say?, (5) What are the disadvantages of cumulative voting?, and (6) What are the most compelling reasons for straight voting?. The answers were all supportive of direct, rather than cumulative, voting. Among the points made were that the cumulative voting rule originated with the developer and gave the developer a weighted advantage in elections, cumulative voting enables minority interests to obtain disproportionate power over HOA matters, the author of the Davis-Stirling Act was on record as saying cumulative voting provides no significant benefit other than to the developer, and direct voting is more democratic and is more easily administered. The letter closed by stating: "Remember: Vote 'Yes' on the upcoming special election.

3

Amend our Bylaws and give Gramercy Towers the up-to-date election procedures it deserves."

The board additionally posted notices in condominium elevators urging members to vote. These notices asked members to "Vote," and stated: "We need quorum by July 25th."

The only complaint Artus voiced at the time was in an e-mail to the board president calling attention to an issue of whether staff materials of the HOA were used in relation to the posted notice and that members who opposed the proposed change were not given an opportunity to post their own messages on the elevator boards.

The July election proceeded, and a large majority of voting HOA members approved the elimination of cumulative voting—136 units in favor and 28 units opposed.

A month later, Artus filed the instant action. She made numerous allegations, including that the HOA had adopted a new rule without consideration of member comments and without giving all members an opportunity to be heard, appointed an interested election inspector, violated member inspection rights, increased assessments excessively and without the required reserve study and budgetary disclosures, and failed to provide accurate disclosure of material aspects of HOA finances. She also sought preliminary injunctive relief to prevent immediate implementation of the new direct voting rule so it would not apply to the upcoming board election.

The trial court granted preliminary relief, ruling Artus had made a sufficient showing that the HOA had violated the Davis-Stirling Act by (1) failing to provide equal access to HOA communications for those with opposing views (§ 5105, subd. (a)(1)[3]), and (2) using association funds for "campaign purposes" in enclosing the two-page letter

---

[3] Section 5105, subdivision (a)(1), provides in relevant part: "An association shall adopt rules . . . that do all of the following: [¶] (1) Ensure that if any candidate or member advocating a point of view is provided access to association media, newsletters, or Internet Web sites during a campaign, for purposes that are reasonably related to that election, equal access shall be provided to all candidates and members advocating a point of view, including those not endorsed by the board, for purposes that are reasonably related to the election."

4

with the ballot (§ 5135, subd. (a)[4]), and that the balance of harm weighed in her favor given the upcoming board election.

Following the issuance of the preliminary injunction, the HOA held a second election on cumulative voting in February 2015. Artus raised no objections to this election. The result was the same as the first—approval of the change by a wide margin, 119 votes in favor and 15 against. The following month, the deferred HOA board elections took place. Artus was not reelected to the board.

In June, Artus proceeded to trial on her claims for permanent injunctive and declaratory relief. Following a three-day bench trial, the trial court issued an eight-page statement of decision. As to the two statutory claims on which preliminary injunctive relief had been granted, the court ruled as follows:

*Violation of § 5105, subdivision (a)(1).* The court found, in connection with the July 2014 election, that Artus never asked for equal access to "association media" to present an opposing view. She did, however, make such a request in connection with the February 2015 election, which the HOA accommodated.[5] In short, even assuming the

---

[4] Section 5135, subdivision (a), provides: "Association funds shall not be used for campaign purposes in connection with any association board election. Funds of the association shall not be used for campaign purposes in connection with any other association election except to the extent necessary to comply with duties of the association imposed by law."

[5] In accordance with the mandate of section 5105, subdivision (a)(1) the HOA's bylaws state: "If any candidate or Owner advocating a point of view is provided access to Association media, newsletters, or Internet Web sites during a campaign, for purposes that are reasonably related to that election, equal access shall be provided to all candidates and Owners advocating a point of view, including those not endorsed by the Board, for purposes that are reasonably related to the election." The HOA's election rules set forth the procedure for effectuating this right and provide: "Each candidate or Member advocating a point of view may prepare and deliver to a person specified in the election notice, care of the Association's office, a statement not exceeding 500 words to be enclosed with the election notice. The Association shall not edit or redact any content from campaign communications. The candidate or Member who issues the communication shall be solely responsible for its content." Artus did not, in connection with the first election, ask to present an opposing view or submit an opposing statement.

equal-access provisions of section 5105, subdivision (a)(1) applied, the court found Artus failed to prove that the HOA, in fact, violated that statute.

*Violation of § 5135, subdivision (a).* The court found that the board's two-page letter merely explained its reasons for proposing the change in voting and, thus, the board had not violated the prohibition against the use of HOA funds for "campaign purposes." The court, in other words, determined that the board's letter did not come within the statutory meaning of "campaign purposes."

The trial court went on to deny permanent injunctive and declaratory relief, recounting that the board had conducted a second election, the results of which were the same as the first. "The second election having addressed whatever valid objections Plaintiff may have had to the first there accordingly is no need for a permanent injunction. . . . If there was any violation of law in the conduct of the first election that has been completely remedied by the second election which was properly conducted and which invalidated the results of the first. . . . [¶] Declaratory relief acts prospectively. For the same reasons as stated above the petition for declaratory relief is denied." The court further found the HOA had "made good faith efforts to comply with all procedures required by law to remedy any deficiencies in the first election" and there was "absolutely no need or basis for appointment of a receiver."

The court additionally ruled the HOA was the "prevailing party" and denied Artus statutory fees and costs.

_____

She did in connection with the second election, and the HOA circulated her opposition statement.

6

*The Trial Court Did Not Err in Denying Declaratory Relief*

Artus has assumed that if she proved either of her claims under the Davis-Stirling Act, then she was *entitled* to declaratory relief.[6] As we explain, that is not the case—declaratory relief is an equitable remedy and need not be awarded if the circumstances do not warrant.

The propriety of a trial court's denial of declaratory relief involves a two-prong inquiry. The first prong concerns whether "a probable future dispute over legal rights between parties is sufficiently ripe to represent an 'actual controversy' within the meaning of the statute authorizing declaratory relief (Code Civ. Proc., § 1060), as opposed to purely hypothetical concerns." (*Steinberg v. Chiang* (2014) 223 Cal.App.4th 338, 343.) This is a "question of law that we review de novo on appeal." (*Ibid.*; *In re Tobacco Cases II* (2015) 240 Cal.App.4th 779, 804 (*In re Tobacco Cases II*).) The second prong concerns "[w]hether such [an] actual controversy *merits* declaratory relief as necessary and proper (Code Civ. Proc., § 1061)." (*Steinberg*, at p. 343; *In re Tobacco Cases II*, at p. 804.) This is a matter within the trial court's sound discretion "except in the extreme circumstances where relief is 'entirely appropriate' such that a trial court would abuse its discretion in denying relief . . . or where relief would *never* be necessary or proper." (*Steinberg*, at p. 343.)

In the proceedings below, neither the parties nor the trial court distinguished between these two prongs of the declaratory relief analysis. The HOA simply asserted the second election made any relief "moot" (although it correctly characterized the issue as one of mootness rather than ripeness, given that at the outset of the litigation, there was, indeed, an "actual controversy" that was ripe for judicial determination (see *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1572–1576 (*Wilson*) [comparing ripeness and mootness]). The trial court, in turn, cited no legal authority supporting its denial of declaratory relief, stating only: "Declaratory relief acts

---

[6] Artus does not challenge the trial court's denial of permanent injunctive relief.

7

prospectively.  For the same reasons as stated above [in connection with denying injunctive relief] the petition for declaratory relief is denied."  In the referenced denial of injunctive relief, the trial court cited to *Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 748–750.  *Connerly* dealt with whether the plaintiff had adequately alleged a "case or controversy," which included whether he had alleged a particularized injury supporting injunctive relief and whether he had alleged an "actual controversy" supporting declaratory relief.  (*Id*. at pp. 746–750.)  Thus, the trial court's citation to *Connerly* in connection with its denial of injunctive relief, at least suggests the court based its denial of declaratory relief on a "prong one" determination.

On appeal, Artus presumes the trial court made a "prong one" determination that no "actual controversy" existed and, therefore, we are presented with "a legal issue which this Court reviews *de novo*."  The HOA, in turn, provides an unhelpful potpourri of standards of review at the outset of its legal argument in its respondent's brief,  while later in its brief contends the trial court did not "abuse its discretion" in "finding" Artus' declaratory relief and injunction claims "moot."

Even assuming, as Artus has, that the trial court based its denial of declaratory relief on a "prong one" determination that there was no longer an "actual controversy," we see no legal error given the facts of this case.  The cases she cites in support of her assertion that the trial court erred as a matter of law, dealt with significantly different circumstances.

In *Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 881 (*Environmental Defense*), an environmental group claimed the county's " 'streamlined zoning process' " violated state planning and zoning laws.  The county appealed from an adverse judgment that found the case "ripe" and granted declaratory relief.  (*Id.* at pp. 883–884.)  On appeal, the county urged there was no " 'actual controversy' " and the trial court had " 'abused its discretion' " in granting declaratory relief—in other words, the county conflated the two prongs of the declaratory relief analysis.  (*Id.* at p. 884.)  As the Court of Appeal explained, the initial inquiry as to whether there is an "actual controversy" is a species of "ripeness" inquiry, presenting a

8

question of law the appellate court reviews de novo. (*Id.* at p. 885 ["For a probable future controversy to constitute an 'actual controversy, . . . the probable future controversy must be ripe."].) "Once an 'actual controversy' exists, it is within the trial court's discretion to grant or deny declaratory relief, and a reviewing court will not disturb that exercise of discretion absent abuse." (*Ibid.*) "Properly framed, then, the initial question" the Court of Appeal had to decide was "whether as a matter of law there was an 'actual controversy' allowing the trial court to exercise its discretion to grant declaratory relief." (*Ibid.*)

The appellate court concluded the case was ripe given the county's response to direct inquiry by the trial court as to whether it intended to continue with its streamlined zoning process, and the trial court's finding that "the county's response meant it would continue with streamlined zoning, as the county believed that such zoning was consistent with state law." (*Environmental Defense*, *supra*, 158 Cal.App.4th at p. 885.) "Under these circumstances," said the Court of Appeal, " 'there [i]s a reasonable expectation that the wrong, if any, will be repeated . . . ,' and the controversy does not present only an 'academic question.' [Citation.] Declaratory relief was therefore appropriate." (*Id.* at pp. 881, 887.)

Here, while the HOA has disputed Artus' claims about the first election , it has not, in contrast with the county's adoption of a streamlined zoning process in *Environmental Defense*, adopted any bylaws or rules that are allegedly unlawful. No current provision of the HOA's bylaws or rules, for example, sets forth a procedure allegedly in violation of the Davis-Stirling Act. Nor did the HOA tell the trial court, in contrast to what the county told the trial court in *Environmental Defense*, that it was going to continue operating under any allegedly unlawful rule or practice. On the contrary, the trial court here found "[t]he evidence demonstrates [the HOA] has made good faith efforts to comply with all procedures required by law to remedy any deficiencies in the first election, and in fact, [] conducted a lawful second election. . . ." The trial court also found there was "absolutely no need or basis" for appointing a receiver to monitor the HOA's future conduct.

9

In *California Alliance for Utility etc. Education v. City of San Diego* (1997) 56 Cal.App.4th 1024 (*California Alliance*), a citizen group alleged "four continuing violations" of the Ralph M. Brown Act (Brown Act; Gov. Code, § 54950 et seq.) by the city in connection with undergrounding power lines under a 50-year franchise agreement with a local power company. (*California Alliance*, at pp. 1026, 1028.) Specifically, the group alleged the city had "adopted a practice" of violating the Act by holding closed meetings on the pretext of pending litigation, failing to give notice of or reasons for the closed sessions, holding improper discussions during closed sessions, and posting misleading agendas. (*Id.* at p. 1028.) The city successfully demurred on the ground any claims for future violations were not "ripe." (*Ibid.*) The Court of Appeal reversed, pointing out that the citizens group alleged the city would continue its allegedly unlawful conduct and observing that the city's insistence it had not violated the Brown Act confirmed there would continue to be a controversy. (*Id.* at p. 1030.) "Thus, there can be no serious dispute that a controversy between the parties exists over [the] city's past compliance with the Brown Act and the [city's] charter. On that basis alone plaintiffs are entitled to declaratory relief resolving the controversy." (*Ibid.*; see *id.* at p. 1031 ["the allegations of the complaint also strongly suggest that in the absence of declaratory relief plaintiffs will have difficulty in preventing future violations"].) While "not controlling," the appellate court also pointed out the controversy was one of public importance. "In the most general sense the controversy is over a long-term contract with the provider of a vital public service and involves literally hundreds of millions of dollars in potential infrastructure improvements over the next 23 years." (*Id.* at p. 1030.) Resolution of the Brown Act issues "will protect not only the public's ability to monitor the activities of its public officials but it will also clarify for city officials the manner in which they may proceed in protecting [the] city's legitimate interests under the franchise agreement." (*Id.* at pp. 1030–1031.)

The circumstances of the instant case are not comparable. Artus did not even allege "continuing violations" of the Davis-Stirling Act, let alone prove any such conduct. On the contrary, she challenged a single HOA election. And while she may

10

have had a variety of complaints about that one election, she never claimed the HOA habitually violated the Davis-Stirling Act, in contrast to the citizens group's allegations in *California Alliance* that the city chronically violated the Brown Act. Further, after a three-day trial, the trial court here expressly found the HOA had acted in good faith to comply with the law and there was "absolutely no need or basis for appointment of a receiver" to monitor the HOA's future conduct. *California Alliance*, in contrast, involved a dismissal following a demurrer. Accordingly, the appellate court in that case was required to credit the citizen group's allegations that the city would continue to violate the Brown Act, an allegation underscored by the city's insistence it was not violating the Act and would continue as it had. (*California Alliance*, *supra*, 56 Cal.App.4th at p. 1030.)

In short, given the record in this case, including the trial court's express findings, Artus cannot rely on generic statements in *California Alliance*, for example, that ripeness does not require allegations and proof of a pattern or practice of past violations, or that a dispute over a public entity's past compliance with a statutory scheme is sufficient to establish an actual controversy. (*California Alliance*, *supra*, 56 Cal.App.4th at p. 1029.) If either of those propositions, alone and in a vacuum, and without regard for the context of the case at hand, were enough to meet the "actual controversy" requirement, the courts would be saddled with the task of resolving historic disputes that have become matters of only academic interest. The courts, however, are not tasked with that obligation. (See, e.g., *In re Tabacco Cases II*, *supra*, 240 Cal.App.4th at p. 805 [the actual, present controversy requirement for declaratory relief " 'would be illusory' " if a plaintiff could meet it " 'simply by pointing to the very lawsuit in which he or she seeks [declaratory] relief' "; the requirement " 'cannot be met in such a bootstrapping manner' "].)

Artus' assertion that she is entitled to declaratory relief to ensure there is no violation of the Davis-Stirling Act in connection with future HOA elections does not satisfy the "actual controversy" requirement. " ' " 'The fundamental basis of declaratory relief is the existence of an actual, *present* controversy over a proper subject.' " ' " (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC*

11

(2015) 234 Cal.App.4th 166, 181, italics added; *Osseous Technologies of America, Inc. v. DiscoveryOrtho Partners LLC* (2010) 191 Cal.App.4th 357, 367 [" 'There is unanimity of authority to the effect that the declaratory procedure operates prospectively, and not merely for the redress of past wrongs.' "].)  Other than pointing to the fact the HOA has defended itself in this one lawsuit, she has not pointed to any evidence that it is probable the HOA will violate the Davis-Stirling Act in conducting future elections.  On the contrary, the trial court expressly found that in holding the second election, the HOA corrected any perceived deficiencies Artus observed in connection with the first, and that there was "absolutely no need or basis for appointment of a receiver" to ensure the HOA complied with the law.  Accordingly, Artus' suggestion future elections could violate the Davis-Stirling Act is pure speculation, which is insufficient to support declaratory relief.  (*See Wilson*, *supra*, 191 Cal.App.4th at p. 1582 [" 'The "actual controversy" language in Code [Civ. Proc., §] 1060 encompasses a *probable* future controversy. . . .  [Citation.]' [Citation.]  It does not embrace controversies that are 'conjectural, anticipated to occur in the future, or an attempt to obtain an advisory opinion from the court.' "].)

In sum, even applying a de novo standard in reviewing the trial court's denial of declaratory relief, we conclude the court did not err in determining there is no basis for such relief on this record.[7]

***Statutory Fees and Costs***

---

[7]  Although we need not, and do not, reach the merits of Artus' two statutory claims, it appears likely the two-page letter the HOA enclosed with the ballot for the first election had a "campaign purpose" within the meaning of section 5135, subdivision (a). On its face, this statute is not confined to "board" elections (§ 5135, subd. (a)), and the letter did more than merely explain the proposed bylaw change and expressly exhorted members to vote "yes."  (See *Vargas v. City of Salinas* (2009) 46 Cal.4th 1, 34–37; *Stanson v. Mott* (1976) 17 Cal.3d 206, 221–223; see also *Wittenburg v. Beachwalk Homeowners Assn.* (2013) 217 Cal.App.4th 654, 666, fn. 5.)  We make no comment on whether Artus proved, as also required by the statute, that HOA funds were used specifically to prepare and disseminate the letter.

Even if she does not succeed in obtaining a final judgment in her favor, Artus maintains she is entitled to interim attorney fees and costs under section 5145 because she obtained preliminary injunctive relief, relying on *Monterossa*, *supra*, 237 Cal.App.4th 747.

*Monterossa* involved the California Homeowner Bill of Rights, and specifically its prohibition against the practice of " 'dual tracking,' " whereby a lender ostensibly works with a defaulting homeowner on a loan modification, but at the same time pursues the foreclosure process. (*Monterossa*, *supra*, 237 Cal.App.4th at pp. 749–750.) The plaintiffs, claiming their lender was involved in the practice, obtained preliminary injunctive relief halting the foreclosure process and immediately sought fees and costs under section 2924.12, subd. (h) (former subd. (i). (*Monterossa*, at p. 750.) The trial court denied their interim request. The Court of Appeal granted writ relief. (*Id.* at pp. 750–751.)

Section 2924.12 authorizes a borrower to "bring an action for injunctive relief to enjoin a material violation of" several statutory provisions, including those that prohibit dual tracking.[8] (§ 2924.12, subd. (a)(1).) It further specifies that "[a]ny injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee . . . or authorized agent has corrected and remedied the violation . . . giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied." (§ 2924.12, subd. (a)(2).) If a violation remains unremedied on the recording of a trustee's deed upon sale, the lender or its agents are liable for damages and, if the violation is the result of intentional or reckless conduct, for civil penalties. (§ 2924.12, subd. (b).) However, the lender or its agent "shall not be liable for any violation that it has corrected and remedied" prior to the recording of the trustee's deed

---

[8] Until January 1, 2018, this statute applied "only to certain entities that foreclosed on more than 175 real properties during their immediately preceding annual reporting period." (*Monterossa*, *supra*, 237 Cal.App.4th at p. 753, fn. 5; §§ 2924.12, subd. (j), 2924.18, subd. (b).)

13

upon sale.  (§ 2924.12, subd. (c).)  "A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section.  A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section."  (§ 2924.12, subd. (h).)

As the Court of Appeal observed, this statute is focused on putting an immediate stop to specific unfair practices by lenders and plainly authorizes interim injunctive relief. (*Monterossa*, *supra*, 237 Cal.App.4th at pp. 753–754.)  For example, the statute provides that an injunction "shall remain" in place "until" the court determines the lender has ceased violating the statute and that a lender "may move to dissolve" an injunction on showing the violation has ceased.  (§ 2924.12, subd. (a)(2).)  The statute further specifies that the lender is not liable for "any" violation that "it has corrected and remedied" prior to the recording of the trustee's deed upon sale.  (§ 2924.12, subd. (c).)  In short, the Legislature has expressly authorized borrowers to seek preliminary injunctive relief, on the one hand, and strongly encouraged lenders to immediately comply with such relief, on the other.  The prompt compliance the Legislature clearly desires will, of course, necessarily moot the need for permanent relief, so it is implicit, if not explicit, that the one-way fee provision designed to encourage borrowers to seek prompt relief, must pertain to preliminary, as well as to permanent, injunctive relief.  (*Monterossa*, at pp. 753–755.)

Moreover, said the appellate court, what the plain language of section 2924.12, itself, reflects, is consistent with the fundamental purpose of the statutory scheme, which is " 'to ensure that, as part of the nonjudicial foreclosure process, borrowers . . . have a meaningful opportunity to obtain, available loss mitigation options, if any, . . . such as loan modifications or other alternatives to foreclosure.' "  (*Monterossa*, *supra*, 237 Cal.App.4th at p. 755, quoting § 2923.4, subd. (a).)  Keeping in mind that the nonjudicial foreclosure process is intended to be relatively expeditious (see *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154), the importance of preliminary injunctive relief to ensure that a borrower is accorded the rights secured by

14

the statute "*as part of* the nonjudicial foreclosure process" is self-evident.  (§ 2623.4, subd. (a), italics added; *Monterossa*, at p. 755.)

Finally, the appellate court concluded the legislative history of section 2924.12 "unequivocally" demonstrated that the Legislature intended to authorize interim fee and cost awards when a borrower obtains preliminary injunctive relief.  (*Monterossa*, *supra*, 237 Cal.App.4th at p. 755.)  For example, the history described exactly the considerations a trial court must weigh in deciding whether or not to issue a preliminary injunction, namely the likelihood of success of the merits and the evidence of harm if preliminary relief is not granted.  (*Id.* at pp. 755–756.)  "Thus," said the court, "the Legislature understood that the intent of the statutory scheme was to permit a trial court to award attorney fees and costs to a borrower who prevails in obtaining a preliminary injunction." (*Id.* at p. 756.)

The *Monterossa* court acknowledged the general rule that fees and costs are not authorized for only interim success, but are awarded at the conclusion of the litigation, when the trial court can evaluate the parties' relative degree of success and declare one or the other, or neither, as having prevailed in the lawsuit.  (*Monterossa*, *supra*, 237 Cal.App.4th at p. 756.; see e.g., *DisputeSuite, LLC v. Scoreinc.com* (2017) 2 Cal.5th 968, 977; *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 833; *Moore v. Liu* (1999) 69 Cal.App.4th 745, 754–755.)  However, said the court, the Legislature has the power to authorize interim fee and cost awards, and has clearly done so in section 2924.12.  (*Monterossa*, at p. 756.)

Artus maintains the "same reasoning" employed in *Monterossa* should apply here because the Davis-Stirling Act, and specifically section 5145, expressly authorizes injunctive relief.  As we explain, section 5145 is part of an entirely different statutory scheme, its language differs markedly from that of section 2924.12, and its legislative history does not suggest, let alone "unequivocally" demonstrate, that the Legislature intended to supplant the general rule that the prevailing party is to be determined, and fees and costs are to be awarded, at the conclusion of a case.

15

Section 5145 is one of a dozen statutory fee provisions sprinkled throughout the Davis-Stirling Act.  (§§ 4225, subd. (d) [action under chapter 3, article 1 to remove unlawful restrictive covenants], 4540 [action under chapter 4, article 2 for violation of statutory provisions concerning transfer disclosures], 4605, subd. (b) [action under chapter 4, article 4 for violation of restrictions on grants of exclusive use of common areas], 4705, subd. (c) [action under chapter 5, article 1 for violation of right to display flag], 4725, subd. (d) [action under chapter 5, article 1 for violation of restrictions on television antennas and satellite dishes], 4745, subd. (k) [action under chapter 5, article 1 for violation of statutory provisions concerning electric vehicle charging stations], 4955, subd. (b) [action under chapter 6, article 2, for violation of statutory provisions concerning board meetings (HOA open meeting law)], 5145, subd. (b) [action under chapter 6, article 4, for violation of statutory provisions concerning association elections], 5230, subd. (c) [action under chapter 6, article 5, for violation of statutory provisions restricting member's use of association records]; 5235, subd. (a) [action under chapter 6, article 5, for violation of statutory provisions concerning members right to inspect association records], 5380, subd. (e) [action under chapter 6, article 9, for violation of statutory provisions concerning trust fund account], 5975, subd. (c) [action under chapter 10, article 4 to enforce governing documents].)

Some of these are traditional "prevailing party" fee statutes.  Many are "one-sided" fee provisions or authorize fees to a prevailing defendant HOA only when the trial court finds the action was frivolous or brought without any reasonable basis.  (E.g., §§ 4540 ["[i]n an action to enforce this liability . . . , the prevailing party shall be awarded reasonable attorney's fees"], 4605, subd. (b) [a "member who prevails in a civil action . . . shall be entitled to reasonable attorney's fees and court costs"; a "prevailing association shall not recover any costs, unless the court finds the action to be frivolous, unreasonable, or without foundation"], 4705, subd. (c) ["In any action to enforce this section, the prevailing party shall be awarded reasonable attorney's fees and costs."], 4725, subd. (d) ["In any action to enforce compliance with this section, the prevailing party shall be awarded reasonable attorney's fees."], 4745, subd. (k) ["In any action to

16

enforce compliance with this section, the prevailing plaintiff shall be awarded reasonable attorney's fees."], 5235, subds. (a) & (c) [in action to enforce member's right to inspect and copy association records, if court finds association unreasonably withheld records, the court "shall award the member reasonable costs and expenses, including reasonable attorney's fees"; "prevailing association may recover any costs if the court finds the action to be frivolous, unreasonable, or without foundation"]; 5380, subd. (e) ["The prevailing party in an action to enforce this section shall be entitled to recover reasonable legal fees and court costs."], 5975, subd. (c) ["In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."].)

Four of the Davis-Stirling Act fee statutes, in addition to section 5145, expressly authorize injunctive relief. Section 4225, subdivision (d), provides that "any person" can bring an action "for injunctive relief" to enforce the prohibition in subdivision (a) against unlawful restrictive covenants. In such action, "[t]he court may award attorney's fees to the prevailing party." (§ 4225, subd. (d).) Section 4605 mirrors much, but not all, of the language of section 5145 and provides that a "member of an association may bring a civil action" (for a violation of the provisions concerning the exclusive use of common areas (§ 4600)) "for declaratory or equitable relief . . . including, but not limited to, injunctive relief, restitution, or a combination thereof, within one year of the date the cause of action accrues." (§ 4605, subd. (a).) It further provides that a "member who prevails in a civil action to enforce the member's rights pursuant to section 4600 shall be entitled to reasonable attorney's fees and court costs." (*Id.*, subd. (b).) However, a "prevailing association shall not recover any costs, unless the court finds the action to be frivolous, unreasonable, or without foundation." (*Ibid.*) Section 4955, subdivision (a), is virtually identical to section 4605 and, thus, also mirrors much of the language of section 5145. It provides that a "member of an association may bring a civil action" (for a violation of the provisions of the Davis-Stirling Act commonly known as the "Common Interest Development Open Meeting Act" (§ 4900)) "for declaratory or equitable relief . . . including, but not limited to, injunctive relief, restitution, or a combination thereof, within one year of the date the cause of action accrues." (§ 4955, subd. (a).) It also

17

further provides that a "member who prevails in a civil action to enforce the member's rights pursuant to this article shall be entitled to reasonable attorney's fees and court costs." (*Id.*, subd. (b).) However, a "prevailing association shall not recover any costs, unless the court finds the action to be frivolous, unreasonable, or without foundation." (*Ibid.*) Finally, section 5230, one of the statutory provisions concerning the inspection of association records, provides that an HOA "may bring an action against any person who violates this article for injunctive relief and for actual damages to the association caused by the violation." (§ 5230, subd. (a).) It further provides that an "association shall be entitled to recover reasonable costs and expenses, including reasonable attorney's fees, in a successful action to enforce its rights under this article." (*Id.*, subd. (c).)

What is immediately striking about *all* of the fee statutes in the Davis-Stirling Act, whether or not they expressly authorize injunctive relief, is that they implicitly, if not explicitly, permit such relief, as they provide for the *enforcement* of specific statutory provisions. Enforcement actions, almost by definition, can involve some form of injunctive relief. We cannot imagine that, in the absence of an explicit directive, the Legislature intended that the general rules governing the prevailing party determination and the timing of fee and cost awards, do not apply to this array of fee statutes merely because they allow for such equitable relief. In fact, for many years, the courts have utilized these general rules in reviewing statutory fee awards under the Davis-Stirling Act, without triggering any reaction by the Legislature. (E.g., *Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 773–777 [no abuse of discretion where trial court deemed plaintiff HOA the prevailing party under § 5975 in action to enforce governing documents]; *Salehi v. Surfside III Condominium Owners' Assn.* (2011) 200 Cal.App.4th 1146, 1150, 1152–1156 [trial court abused discretion in failing to award defendant HOA fees and costs under former § 1354 in action to enforce association documents where plaintiff member "prevailed on no level . . . , let alone on a 'practical level' "].) With these initial observations, we turn specifically to the language and history of section 5145.

As we have noted, the language of section 5145 is largely the same as that of two of the other Davis-Stirling Act fee statutes—sections 4605 (concerning the exclusive use of common areas) and 4955 (part of the HOA open meeting law). The Law Revision Commission Comments to all three sections state their language "continues" former section 1363.09, except for minor, nonsubstantive changes. (Cal. Law Revision Com. com., 12B Pt. 2 West's Ann. Civ. Code (2016 ed.) foll. §4955, p. 69 & § 5145, p. 93; Cal. Law Revision Com. com., 12B Pt. 1 West's Ann. Civ. Code (2016 ed.) foll. § 4605, pp. 464–465.) We therefore turn our attention to former section 1363.09.

Former section 1363.09 was added to the Davis-Stirling Act in 2005 at the same time the election provisions were added. Entitled "Remedy," former section 1363.09 did not apply just to the new election provisions, but to any "violation of *this article*," namely then article 2 of chapter 4. (Assem. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) § 1363.09, subd. (a), p. 7, June 28, 2005.) At that time, former article 2 included not only the new election provisions (codified as section 1363.03), but also the existing HOA open meeting provisions (codified as section 1363.05), and another new statute added in 2005 concerning the exclusive use of common areas (codified as section 1363.07). (Sen. Bill No. 61 (2005–2006 Reg. Sess.) § 1363.03, p. 2, as introduced Jan. 14, 2005; Assem. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) §§ 1363.05, p. 4, 1363.07, pp. 5–6, June 28, 2005.) Thus, former section 1363.09 was, so to speak, an omnibus remedies provision for former chapter 4, article 2.

Former section 1363.09 provided in pertinent part that a "member of an association may bring a civil action for declaratory or equitable relief for a violation of this article by an association . . . , including, but not limited to, injunctive relief, restitution, or a combination thereof, within one year of the date the cause of action accrues." (Assem. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) § 1363.09, subd. (a), p. 7, June 28, 2005, italics omitted.) It further provided that a "member who prevails in a civil action to enforce his or her rights pursuant to this article shall be entitled to reasonable attorney's fees and court costs." (*Id*., subd. (b).) A prevailing defendant association was not entitled to recover costs unless the court found the action

19

"to be frivolous, unreasonable, or without foundation." (*Ibid.*) The statute additionally specified that certain claims under the new election provisions, including those seeking access to association resources to express a point of view, could be brought in small claims court if the amount demanded did not exceed that court's jurisdictional amount. (*Id.*, subd. (c).)

Former section 1363.09 found its way into the Davis-Stirling Act through two, complimentary pieces of legislation that moved in tandem through the Legislature— Senate Bill No. 61 and Assembly Bill No. 1098.

As introduced, Senate Bill No. 61 proposed adding a new statute, section 1363.03, that would impose basic requirements for HOA elections. (Sen. Bill No. 61 (2005–2006 Reg. Sess.) as introduced Jan. 14, 2005.) It additionally provided, in a proposed subdivision (f) of the new statute, that any member could bring "a civil action for declaratory relief, injunctive relief, restitution, or a combination thereof." (*Id.* at p. 3.) The proposed new statute did not, however, include any provision for attorney fees. (*Id.* at pp. 2–3.)

Assembly Bill No. 1098, upon its first amendment, also proposed adding a new statute, section 1363.07, that would impose HOA election requirements. (Assem. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) § 1363.07, pp. 2–5, April 11, 2005.) These requirements were focused on certain kinds of elections and were more detailed than the requirements set forth in Senate Bill No. 61. The assembly bill also authorized a member to "initiate a civil action to enforce his or her rights" and required a court to void an election that violated the proposed statutory requirements. (*Id.*, subd. (f), at p. 5.) It additionally provided, in a proposed subdivision (f) of the new statute, for fees and costs to "any member who *initiates* a civil action." (*Ibid.*) However, the author quickly proposed an amendment to correct "a drafting error" and replaced the word "initiates," with "prevails." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1098 (2005–2006 Reg. Sess.) as amended April 26, 2005.) Thereafter, the assembly bill was amended to delete all election requirements, but was then amended again to re-include the focused election provisions and the remedy and fee provisions. (Sen. Amend.

20

to Assem. Bill. No. 1098 (2005–2006 Reg. Sess.) June 14, 2005, pp. 4–5.) At this point, the assembly bill proposed removing the remedy and fee provisions from the proposed new section 1363.07, and placing them, instead, in another proposed new section, 1363.09. (*Id.*, at p. 5.) The fee provisions were also amended to specify that only a member "who prevails" in a civil action would be entitled to recover fees and costs. (*Ibid.*)

In the meantime, Senate Bill No. 61 was also amended several times, expanding election requirements and eventually providing for both remedies and fees, again in a proposed new, separate statute—section 1363.09. (Assem. Amend. to Sen. Bill No. 61 (2005–2006 Reg. Sess.) June 23, 2005, p. 6.) Thus, at this juncture, both Senate Bill No. 61 and Assembly Bill No. 1098 contained the language that ultimately became section 1363.09.

Senate Bill No. 61 was then amended to state that the author of Assembly Bill No. 1098 was the principal "co-author" of Senate Bill No. 61. (Assem. Amend. to Sen. Bill No. 61 (2005–2006 Reg. Sess.) August 31, 2005.) Assembly Bill No. 1098, in turn, was amended to delete all election requirements and the election remedies and fee provisions, and to, instead, impose requirements on the use of common areas in the proposed new section 1363.07 and to add further requirements pertaining to the disclosure of HOA records to then existing section 1365.2. (Sen. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) Sept. 2, 2005.) Accordingly, as ultimately passed by the Legislature, Senate Bill No. 61 added the election provisions codified as sections 1363.03 and 1363.04, and the remedies and fee provisions codified as 1363.09. (Assem. Amend. to Sen. Bill No. 61 (2005–2006 Reg. Sess.) Sept. 2, 2005, pp. 3–8.)

The report of the Assembly Judiciary Committee on Senate Bill No. 61 had this to say about the proposed new remedies statute: "In order to protect the vital rights established here, the bill also provides a remedy for any violation, including equitable relief and a discretionary civil penalty in an amount to be determined by the court up to a maximum of $1000 per violation. In order to make the remedy meaningful, the bill provides for recovery of reasonable attorney's fees, as are currently allowed with respect

21

to a prevailing member when an association violates its obligations regarding the disclosure of association records.[9]  Prevailing associations may also recover litigation costs if an action is frivolous, unreasonable or without foundation.  Finally, in order to allow for an expeditious and economical method of enforcement, the bill allows specified actions to be brought in small claims court where the court may order compliance with the statute." (Assem. Com. on Judiciary, Analysis of Sen. Bill. 61 (2005–2006 Reg. Sess.) June 21, 2005, pp. 5–6; see Assem. Com. on Housing & Community Development, Analysis of Sen. Bill No. 61 (2005–2006 Reg. Sess.) June 29. 2005, pp. 6–7 [referencing the record disclosure fee provisions and also stating "in order to allow for an expeditious and economical method of enforcement, the bill allows specified actions to be brought in small claims court"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 61 (2005–2006 Reg. Sess.) as amended Sept. 2, 2005, pp. 5–6 [also referencing the record disclosure fee provisions and noting specified actions can be brought in small claims court].)

In 2011, the California Law Revision Commission submitted its recommendations on the "Statutory Clarification and Simplification of CID Law." (Recommendation: Statutory Clarification and Simplification of CID Law (Feb. 2011) 40 Cal. Law Revision Com. Rep. (2011) p. 235.)  Observing that the Davis-Stirling Act was "not well organized or easy to use" and "[r]elated provisions are not always grouped together in a coherent order" (*id*. at p. 242), the commission proposed a total recodification of the Davis-Stirling Act, which the Legislature implemented in 2012.  (§ 4000 et seq.; e.g. Assem. Com. on Judiciary, Analysis of Assem. Bill No. 805 (2011–2012 Reg. Sess.) April 26, 2011, p. 1

---

**9** The provisions concerning inspection and copying of association records were enacted two years earlier and codified as former section 1365.2.  Then subdivision (e) provided in pertinent part:  "A member of an association may bring an action to enforce the member's right to inspect and copy [specified] association records.  If a court finds that the association unreasonably withheld access to [these] records, the court shall award the member reasonable costs and expenses, including reasonable attorney's fees, and may assess a civil penalty. . . ."  (Former § 1365.2, subd. (e).)  As we have discussed, these record disclosure provisions were expanded in 2005 through Assembly Bill No. 1098.  (Assem. Amend. to Assem. Bill No. 1098 (2005–2006 Reg. Sess.) April 11, 2005, p. 7.)

["bill reflects the fruit of four-year's of public input and extensive study on the part of the [Commission] to revise and recast the state's cumbersome and often confusing statutory provisions relating to the regulation of a common interest development (CID) and the respective rights and duties of a homeowner's association (HOA) and its members"].) This reorganization and recodification made only "minor substantive changes," and these were to "achieve internal consistency." (*Ibid*.)

As a result of this recodification, former section 1363.09 was eliminated and its remedial provisions were thrice replicated and recodified as three new statutes. Since the substantive statutory provisions concerning the exclusive use of common areas (formerly codified as § 1363.07) were recodified as section 4600 and placed in a new chapter 4, the correlating remedial provisions formerly in section 1363.09 were recodified as section 4605. Since the substantive open meeting provisions (formerly codified as § 1363.05) were recodified as section 4900 et seq. and placed in a new chapter 6, the correlating remedial provisions formerly in section 1363.09 were recodified as section 4955. And since the substantive election provisions (formerly codified as § 1363.03) were recodified as section 5000 et seq. and also placed in new chapter 6, the correlating remedial provisions formerly in section 1363.09 were recodified as section 5145. (See Cal. Law Revision Com. com., 12B Pt. 1 West's Ann. Civ. Code (2016 ed.) foll. § 4605, pp. 464–465; Cal. Law Revision Com. com., 12B Pt. 2 West's Ann. Civ. Code (2016 ed.) foll. §§ 4955, p. 69, 5145, p. 93.)

This excursion through the history of section 5145 demonstrates that this statute differs markedly from the fee provision in the Homeowner's Bill of Rights (former § 2924.12, subd. (i)) at issue in *Monterossa*. Section 5145 is not tied to any substantive provisions like those in section 2924.12, which expressly set forth a process whereby the borrower is incentivized to seek preliminary injunctive relief, the lender is incentivized to promptly comply, and upon compliance, the lender can move to dissolve the injunction and is protected from further liability under the statute. (§ 2924.12, subds. (a)–(f).) The *Monterossa* court quite rightly described section 2924.12 as a "unique statutory scheme" and one that clearly envisions preliminary injunctive relief as a principal tool for

23

compliance and the reward of fees and costs for achieving compliance in such manner. (*Monterossa*, *supra*, 237 Cal.App.4th at pp. 754–755.) The same cannot be said about either the substantive election provisions now set forth in sections 5100 et seq. or the remedy and fee provisions now set forth in section 5145.

Furthermore, when we consider the language of section 5145, we are not considering only this statute. Rather, we are actually considering the language of former section 1363.09, since section 5145 merely "continue[d]" the former statute's remedial provisions. (Cal. Law Revision Com. com., 12B Pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 5145, p. 93.) As we have discussed, former section 1363.09 set forth the remedy and fee provisions for three different substantive provisions of the Davis-Stirling Act— those pertaining to HOA elections (formerly codified as § 1363.03, now codified as § 5100 et seq.), those setting forth the HOA open meeting laws (formerly codified as § 1363.05, now codified as § 4900 et seq.), and those pertaining to the exclusive use of common areas (formerly codified as § 1363.07, now codified as § 4600). Accordingly, were we to conclude, as Artus urges, that the Legislature intended that the general rules governing the prevailing party determination and the timing of an award of fees and costs do not apply to section 5145, we would have to conclude the same as to sections 4605 (pertaining to the exclusive use of common areas) and 4955 (pertaining to the HOA open meeting law), as well. Had the Legislature intended this when it enacted the remedy and fee provisions formerly in section 1363.09 and now replicated and recodified in these three statutes, it could have, and undoubtedly would have, made that clear. As it is, there is no suggestion in either the language of these statutes or the legislative history of former sections 1363.03 or 1363.09 that the Legislature intended that the courts abandon the general rules pertaining to attorney fee and cost awards and treat these provisions as uniquely authorizing fees and costs for only interim success.

Finally, as to section 5145, in particular, the Legislature has expressly authorized a means to seek expedited relief, with a minimal expenditure of party resources. As we have observed, subdivision (c) of former section 1363.09 provided that "[a] cause of action under Section 1363.03 with respect to access to association resources by

24

candidates and advocates, the receipt of a ballot by a member, or the counting, tabulation, or reporting of, or access to, ballots for inspection and review after tabulation may be brought in small claims court if the amount of the demand does not exceed the jurisdiction of that court." (Assem. Amend. to Sen. Bill No. 61 (2005–2006 Reg. Sess.) June 23, 2005, pp. 6–7.) Subdivision (c) of section 5145 continues this express authorization of small claims court jurisdiction. (Cal. Law Revision Com. com., 12B Pt. 2 West's Ann. Civ. Code (2016 ed.) foll. §5145, subd. (c), p. 93.) Thus, while the Legislature could have enacted a substantive and procedural scheme like the one it set forth in section 2924.12 of the Homeowner's Bill of Rights Act, it chose to provide a different, albeit more limited, procedural device to facilitate a relatively expeditious and less costly means to resolve certain violations of the election provisions of the Davis-Stirling Act. It is not the role of the courts to add statutory provisions the Legislature could have included, but did not. (See *City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 32–36; *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 594.)

We therefore conclude, for all the reasons we have set forth, that the reasoning of *Monterossa* does not apply to section 5145. As Artus advances no other theory in support of her claim for statutory fees and costs, we affirm the trial court's order denying such fees and costs.

## DISPOSITION

The judgment and order denying statutory attorney fees and costs is affirmed. The parties are to bear their own costs on appeal.

25

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.


A147297, *Artus v. Gramercy Towers Condo Assn.*

26

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Charles F. Haines

Counsel:

Millstein & Associates, David J. Millstein and Gerald Richelson; Moskovitz Appellate Team, Myron Moskovitz, William D. Stein and Donald Horvath, for Plaintiff and Appellant.

Wendel, Rosen, Black & Dean LLP, Albert Flor Jr., Charles A Hansen and Jason M. Horst, for Defendant and Respondent.