Filed 6/12/15

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

**(Sacramento)**

**----**

| | |
|---|---|
| MICHAEL MONTEROSSA et al., | C077683 |
| Petitioners, | (Super. Ct. No. 34-2014-00162063-CU-OR-GDS) |
| v. | |
| THE SUPERIOR COURT OF SACRAMENTO COUNTY, | |
| Respondent; | |
| PNC BANK, etc., et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Steven H. Rodda, Judge. Writ petition granted with directions.

United Law Center, Stephen J. Foondos and Danny A. Barak for Petitioners.

No appearance for Respondent.

1

LeClairRyan, Peter J. VanZandt and Lindsey S. Libed for Real Party in Interest PNC Bank, a division of PNC Bank, N.A.

No appearance for Real Party in Interest Quality Loan Service Corporation.

In 2012, new legislation imposed specific limitations regarding the nonjudicial foreclosure of owner-occupied residential real property.[1]  Among other things, the statutory scheme provides that a court may award reasonable attorney fees and costs to the "prevailing borrower," indicating:  "A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section."  (Civ. Code, § 2924.12, subd. (i).)[2]  In this case, the respondent superior court concluded the petitioners were not prevailing borrowers because they obtained only a preliminary, rather than permanent, injunction.  The court erred.  We hold that a borrower who obtains a preliminary injunction enjoining, pursuant to section 2924.12, the trustee's sale of his or her home is a "prevailing borrower" within the meaning of the statute.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 16, 2014, petitioners Michael Monterossa and Cheranne Nobis filed an ex parte application for a temporary restraining order (TRO) and request for issuance of an order to show cause regarding a preliminary injunction, seeking to prevent the trustee's sale of their Folsom residence, then scheduled for April 21, 2014.

---

[1]  Statutes 2012, chapter 86; Statutes 2012, chapter 87.  Although the Legislature did not give the legislation a title, the Governor in his signing statement, and courts and commentators, have referred to the legislation as the "California Homeowner Bill of Rights."  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86 & fn. 14; Koo, *Saving the California Homeowner Bill of Rights from Federal Banking Preemption* (2013) 48 U.S.F. L.Rev. 189; Jacobs & Stern, *Rights in Foreclosure* (Jan. 2013) 35 L.A. Lawyer 24, 25-26 & fn. 32.)

[2]  Undesignated statutory references are to the Civil Code.

2

Simultaneously, petitioners filed a civil complaint against real parties. On April 17, the respondent superior court issued an order granting the TRO, enjoining real parties in interest from conducting the trustee's sale pending a May 8, 2014 hearing on petitioners' motion for a preliminary injunction.

In support of the motion for a TRO and preliminary injunction, petitioners declared, as relevant: Petitioners obtained a loan of $359,650 from PNC Mortgage, a division of PNC Bank, N.A. (PNC), and purchased their home in 2005. In June 2013, petitioners were unable to make their mortgage payments. PNC twice wrote to petitioners in August, asking them to call PNC for help with foreclosure prevention alternatives, and telling them that PNC wanted to help them retain their home. Petitioners repeatedly called PNC to request a "hardship assistance package," but PNC failed to send them one. Despite PNC's failure to send petitioners a hardship assistance package, PNC notified petitioners that their request for hardship was denied because PNC did not receive a completed hardship assistance package from petitioners. Thereafter, PNC recorded a notice of default with Quality Loan Service Corporation. In November 2013, petitioners submitted a loan modification agreement to PNC, and PNC "appointed a single point of contact" named Hazel, who informed petitioners they needed to submit missing documents. On December 5, 2013, petitioners submitted the missing documents, and Hazel confirmed PNC had received a complete package. On January 24, 2014, PNC recorded a notice of trustee's sale on the property. Petitioners immediately called PNC, and were told that their loan modification was denied due to missing documents.

After a hearing, the respondent superior court issued an order on May 8, 2014, granting petitioners' motion for a preliminary injunction enjoining the trustee's sale of petitioners' home, conditioned on petitioners either posting a $20,000 bond or paying real party PNC $2,135.54 monthly pending trial of the action. The court reasoned that real parties offered no evidence in opposition to petitioners' evidence that real parties engaged

3

in "dual tracking" by recording a notice of trustee's sale while simultaneously engaging in the loan modification process, in violation of section 2923.6. The court concluded: "[Petitioners] would suffer irreparable harm if they were to lose their residence before the merits of their claims were adjudicated. Any harm to [real parties] in granting the injunction is far outweighed by the damage to [petitioners] if the injunction were to be denied."

Thereafter, petitioners filed a motion for attorney fees and costs pursuant to section 2924.12, subdivision (i). After a hearing, the respondent superior court denied the motion, reasoning the language of the statute is consistent with the award of attorney fees at the conclusion of the action; statutory attorney fees are awardable only at the end of the case; and the statute does not specifically provide for an interim award of attorney fees upon the granting of provisional relief such as a preliminary injunction.

Petitioners filed a petition for writ of mandate seeking an order directing the respondent superior court to grant the motion for attorney fees and costs. We issued an order to show cause. Real party PNC has filed a return. We shall issue a peremptory writ of mandate.

## DISCUSSION

Petitioners contend the respondent superior court erred in interpreting subdivision (i) of section 2924.12 as precluding an award of attorney fees and costs if a borrower obtains only a preliminary rather than a permanent injunction. We agree.[3]

---

[3] We expressly decline to determine whether an order denying attorney fees and costs under section 2924.12 is immediately appealable or is reviewable upon appeal from a final judgment in the case. "To obtain writ review, a petitioner generally must show his or her remedy in the ordinary course of law is inadequate or that petitioner would suffer irreparable injury were the writ not granted. [Citations.] However, discretionary writ review may nevertheless be appropriate 'where it is necessary to resolve an issue of first impression promptly and to set guidelines for bench and bar.' " (*Interinsurance*

4

"Generally, we review an award of fees and costs by the trial court for abuse of discretion. 'However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Crews v. Willows Unified School Dist.* (2013) 217 Cal.App.4th 1368, 1379, citing & quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.)

" 'The rules governing statutory construction are well settled. We begin with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent. [Citations.] To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) In addition, 'every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. [Citation.] Legislative intent will be determined so far as possible from the language of the statutes, read as a whole.' (*County of Fresno v. Clovis Unified School Dist.* (1988) 204 Cal.App.3d 417, 426.)" (*Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 675-676.)

"[O]n July 2, 2012, the California Legislature passed Assembly Bill No. 278 and Senate Bill No. 900 (2011-2012 Reg. Sess.), which have since been signed into law by

*Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225.) We exercise our discretion to resolve the important question of first impression raised by this writ petition, for the benefit of the bench and bar.

the Governor.  These provisions address more pointedly the foreclosure crisis in our state through even greater encouragement to lenders and loan servicers to engage in good faith loan modification efforts.  [¶]  One of the targets of the legislation is a practice that has come to be known as 'dual tracking.'  'Dual tracking refers to a common bank tactic. When a borrower in default seeks a loan modification, the institution often continues to pursue foreclosure at the same time.'  (Lazo, *Banks are foreclosing while homeowners pursue loan modifications*, L.A. Times (Apr. 14, 2011); see Sen. Floor Analyses, Conf. Rep. on Assem. Bill No. 278, as amended June 27, 2012, p. 3.)  The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it.  'Mortgage lenders call it "dual tracking," but for homeowners struggling to avoid foreclosure, it might go by another name:  the double-cross.'  (Lazo, *Banks are foreclosing*.)"  (*Jolley v. Chase Home Finance*, *LLC* (2013) 213 Cal.App.4th 872, 904, fn. omitted.)[4]

The prohibition against dual tracking is found in section 2923.6, subdivision (c), which provides in pertinent part:  "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a

---

[4]  Assembly Bill No. 278 (Stats. 2012, ch. 86) and Senate Bill No. 900 (Stats. 2012, ch. 87) (2011-2012 Reg. Sess.) enacted identical provisions.  Because Senate Bill No. 900 was chaptered with a higher number, its provisions apply.  (See Gov. Code, § 9605 ["In the absence of any express provision to the contrary in the statute which is enacted last, it shall be conclusively presumed that the statute which is enacted last is intended to prevail over statutes which are enacted earlier at the same session and, in the absence of any express provision to the contrary in the statute which has a higher chapter number, it shall be presumed that a statute which has a higher chapter number was intended by the Legislature to prevail over a statute which is enacted at the same session but has a lower chapter number"]; *In re Thierry S*. (1977) 19 Cal.3d 727, 745, fn. 17 ["in this state the highest chapter number rule and related analyses, when applicable, constitute the exclusive method designated by the Legislature for interpreting legislative intent and resolving conflicts between statutes enacted at the same session"].)

notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

And the prohibition against dual tracking is given teeth by section 2924.12, which provides remedies for a violation of section 2923.6 or other specified provisions of the statutory scheme. The remedies are different, depending on whether a trustee's deed upon sale has been recorded. "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." (§ 2924.12, subd. (a)(1).) "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied." (§ 2924.12, subd. (a)(2).)

"After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)." (§ 2924.12, subd. (b).)

Here, because a notice of trustee's deed upon sale had not been recorded, petitioners sought and obtained a preliminary injunction enjoining the trustee's sale. As

7

we have indicated, petitioners then sought an award of attorney fees and costs, pursuant to subdivision (i) of section 2924.12, which provides: "A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section."[5]

The statute at issue refers to "injunctive relief," which plainly incorporates both preliminary and permanent injunctive relief. Nevertheless, the respondent superior court concluded that the phrase "prevailing borrower . . . in an action" suggests the Legislature intended for an award of attorney fees and costs solely at the conclusion of the action, i.e., after a judgment issuing a permanent injunction. However, a preliminary injunction is obtained "in an action." And a borrower who obtains a preliminary injunction has prevailed in obtaining "injunctive relief." Thus, the plain language of subdivision (i) of section 2924.12 provides for attorney fees and costs to a borrower who obtains a preliminary injunction.

But even if we assume the phrase "prevailing borrower . . . in an action" creates an ambiguity as to whether the Legislature intended to authorize attorney fees and costs when a preliminary injunction is issued, nevertheless the language and purpose of the statutory scheme, and its legislative history, demonstrate the Legislature intended to authorize an award of attorney fees and costs when a preliminary injunction issues.

Under this unique statutory scheme, in many cases the best a plaintiff can hope to achieve is a preliminary injunction. "In deciding whether to issue a preliminary

---

[5] Section 2924.12 applies only to certain entities that foreclosed on more than 175 real properties during their immediately preceding annual reporting period. (§§ 2924.12, subd. (j), 2924.18, subd. (b).) Real party PNC does not contend that section 2924.12 does not apply to it.

8

injunction, a trial court weighs two interrelated factors:  the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 999.)  Where the trial court has found the plaintiff is likely to prevail on the claim of a "material violation" of one of the provisions enumerated in subdivision (a)(1) of section 2924.12, and accordingly has issued a preliminary injunction, the "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" can expeditiously correct and remedy the violation giving rise to the action for injunctive relief and then move to dissolve the preliminary injunction pursuant to subdivision (a)(2) of section 2924.12. This compliance with the statutory scheme would consequently moot the borrower's request for a permanent injunction.  But, given that the borrower has effectively prevailed in the action by obtaining a preliminary injunction forcing compliance with the statute, the Legislature must have intended to authorize an award of attorney fees and costs when a trial court issues a preliminary injunction pursuant to subdivision (i) of section 2924.12.

As an example, in this case the respondent court found petitioners' showing to be undisputed that real parties "dual tracked" petitioners in violation of section 2923.6 by recording a notice of trustee's sale while petitioners' first lien loan modification application was pending.  Rather than wait for trial on petitioners' claim for a permanent injunction, real parties could simply comply with the statutory scheme and then, if necessary, move to dissolve the preliminary injunction in order to record a new notice of trustee's sale.  That is, real parties could provide petitioners with a written determination regarding the loan modification application (§ 2923.6, subd. (c)), and if a loan modification is granted, wait 14 days for petitioners to decide whether to accept it (§ 2923.6, subd. (c)(2)).  If loan modification is denied, real parties would wait 31 days to determine if petitioners appealed, and if they did, wait another 15 days if the appeal was denied.  (§ 2923.6, subds. (d) & (e).)  The short time periods set out in the statutory

scheme suggest the Legislature's understanding that a prevailing borrower's preliminary injunctive victory may often be short-lived and subject to dissolution upon compliance with the statutory scheme's procedural requirements.[6]

Our interpretation of the statute as authorizing attorney fees and costs when a borrower obtains a preliminary injunction is further supported by the purpose of the statutory scheme, set out in section 2923.4, subdivision (a): "The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process." In enacting the statutory scheme, the Legislature mandated a process for fair consideration of options other than foreclosure. As we have explained, when a lender fails to comply with that process, the borrower prevails by obtaining a preliminary injunction requiring the lender to comply with the process. After correcting the error, the lender may move to dissolve the preliminary injunction, and in such cases, there will be no need for a trial regarding a permanent injunction. The Legislature's purpose is fulfilled by providing attorney fees and costs to a borrower who successfully forces the lender to comply with the statutory process by obtaining a preliminary injunction.

Finally, the legislative history demonstrates unequivocally that the Legislature intended to authorize an award of attorney fees and costs when a trial court grants a preliminary injunction as a result of a lender's violation of sections 2923.55, 2923.6,

---

[6] The same short time limits would apply to correct most of the other statutory violations set out in section 2924.12, i.e., sections 2923.7 (single point of contact), 2924.9 (notification of foreclosure prevention alternatives), 2924.10 (notice regarding loan modification process), and 2924.17 (requirements for declarations in support of trustee's sale documents).

10

2923.7, 2924.9, 2924.10, 2924.11, or 2924.17. As explained in the July 2, 2012 Senate Rules Committee's "Conference Report No. 1" regarding Senate Bill No. 900, as amended June 27, 2012, page 29: "Importantly, no action for money damages would be allowed until the date the trustee's deed is recorded after a foreclosure sale. At all times until then, the only legal remedy a homeowner may seek is an action to enjoin a substantial violation of the specified sections, along with any trustee's sale. *When a court considers a request for injunctive relief it must determine whether there is convincing evidence of harm if the injunction is not granted. The court will also consider if the borrower has a likelihood of prevailing on the merits*. As part of that consideration, no legal action would be permissible if brought in bad faith or intended merely for the purpose of unnecessary delay, and *no injunctive relief could be awarded unless the homeowner could show a likelihood of prevailing on the merits in relation to the balance of harms. Any such injunction is to be dissolved if the moving party shows that the violation has been redressed*. No special pre-litigation procedures or particular allegations are required by the amendments, whether or not the sale is pending. Conversely, the servicer or other covered entity may avoid legal action by curing the violation any time prior to recordation of a trustee's deed. This right to cure is not unprecedented in comparable circumstances where the parties are known to each other and have an established relationship of ongoing communication. Equivalent provisions may be found in Civil Code Section 910 et seq. and Labor Code Section 2698 et seq. *If it is necessary to order injunctive relief, a party who obtains an injunction is among those who is recognized as a prevailing party for the purposes of attorney's fees and costs. As with the vindication of other important statutory rights, an award of attorney's fees and costs is to be decided by the court*. (See, e.g., Code of Civil Procedure Section 1021.5; Government Code Section 12965; Civil Code Section 52.1.)" (Italics added.) Thus, the Legislature understood that the intent of the statutory scheme was to permit a trial court

11

to award attorney fees and costs to a borrower who prevails in obtaining a preliminary injunction.

We reject the position of the superior court and real party PNC that "interim" attorney fee awards may never be made in conjunction with provisional relief such as the issuance of a preliminary injunction.  Indeed, the conference report to Senate Bill No. 900, quoted above, expressly refers to one statute as to which attorney fees have been awarded to a plaintiff who obtained a preliminary injunction, i.e., Code of Civil Procedure section 1021.5.  (See, e.g., *Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1080, 1086.)  The respondent superior court and real party mistakenly rely on a practice guide, which notes only the general rule that attorney fees are ordinarily awarded at the end of the case rather than when interim relief is granted. (Wegner et al., Cal. Practice Guide:  Civil Trials and Evidence (The Rutter Group 2014) ¶ 17:152.5, pp. 17-115 to 17-116.)  Indeed, the case cited by the practice guide simply recognizes that attorney fees may be awarded only when specifically provided for by statute, and asserts that interim attorney fee awards in California have been limited to cases under Code of Civil Procedure section 1021.5.  (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 830-832.)  But, here, the Legislature has specifically provided that trial courts may award attorney fees upon issuance of "injunctive relief," which includes the issuance of a preliminary injunction.

We reject also real party PNC's contention that it is improper to award attorney fees because a preliminary injunction may issue solely to preserve the status quo. Although the case authority relied on by real party PNC recognizes that the purpose of a preliminary injunction is to maintain the status quo, the cases also state the rule that a trial court must consider both the plaintiff's likelihood of prevailing on the merits and the balance of harms to the parties; and, further, that the trial court must deny a preliminary injunction if the plaintiff has no reasonable probability of prevailing on the merits.

12

(*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528; *SB Liberty*, *LLC v. Isla Verde Assn.*, *Inc.* (2013) 217 Cal.App.4th 272, 280; see, e.g., *Weingand v. Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806, 820; *Pro-Family Advocates v. Gomez* (1996) 46 Cal.App.4th 1674, 1681.)  In order to issue a preliminary injunction, the respondent superior court was required to, and did in fact, determine that petitioners were likely to prevail on the merits.  An award of attorney fees at the preliminary injunction stage furthers the legislative purpose of ensuring borrowers have a meaningful opportunity to participate in available loss mitigation options.

We reject real party PNC's contention that an absurd consequence may result if attorney fees are awarded to a borrower at the preliminary injunction stage only to have the lender correct the violation or to have the borrower lose in a subsequent effort to obtain a permanent injunction.  There is nothing absurd about such an outcome.  A borrower who obtains a preliminary injunction that prevents the foreclosure of his or her home because of the lender's violation of section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17, may recover attorney fees expended to obtain the preliminary injunction.  The borrower has prevailed in the action by obtaining injunctive relief.  The lender's correction of the violation and successful motion to dissolve the preliminary injunction will not entitle the lender to recover the attorney fees.  If the lender fails to correct the violation and to move to dissolve the preliminary injunction, as a practical matter, the borrower may have little incentive to set the matter for trial of a permanent injunction.  But, in the scenario where the borrower has obtained a preliminary injunction and then pursues but fails to obtain a permanent injunction, the borrower will still have been entitled to seek the attorney fees he or she incurred in order to obtain the preliminary injunction.

# DISPOSITION

Let a peremptory writ of mandate issue directing the respondent superior court to vacate its September 3, 2014 order denying petitioners' motion for attorney fees and costs, and to consider that motion on its merits. Petitioners are awarded their costs of this proceeding. (Cal. Rules of Court, rule 8.493(a).) (***CERTIFIED FOR PUBLICATION***)


                                                     BUTZ           , Acting P.J.


We concur:


        MURRAY          , J.


        DUARTE         , J.

14