Filed 8/28/19

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROSANA M. BUSTOS, | C085657 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2017-00209395-CU-OR-GDS) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed.

Anglin Flewelling Rasmussen Campbell & Trytten, Robert Collings Little, and Robin Carl Campbell for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part 2.0 of the Discussion section.

1

This is a nonjudicial foreclosure action. In 2012, California enacted legislation known as the California Homeowner Bill of Rights, or HBOR, which imposed specific limitations regarding the nonjudicial foreclosure of owner-occupied residential real property. (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86 & fn. 14.) Among other things, the HBOR prohibits "dual track" foreclosures, which occur when a mortgage servicer continues foreclosure proceedings while reviewing a homeowner's application for a loan modification. (*Id.* at p. 86, fn. 14; Civ. Code, § 2923.6, subd. (c).)[1] The HBOR provides for injunctive relief to remedy statutory violations that occur prior to foreclosure (§ 2924.12, subd. (a)), and monetary damages when the borrower seeks relief for statutory violations after the foreclosure sale has occurred (§ 2924.12, subd. (b)). The HBOR gives trial courts the discretion to award reasonable attorney fees and costs to the "prevailing borrower," providing: "A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section." (§ 2924.12, subd. (h).)

The trial court granted Rosana Bustos's (Bustos) ex parte application for a temporary restraining order (TRO) and order to show cause regarding preliminary injunction, which sought to prevent a trustee's sale of her home due to several alleged violations of the HBOR related to her submission of a loan modification application. "At the heart" of Bustos's application was a "blatant violation" of the HBOR's prohibition against dual tracking. After the trial court denied Bustos's request for a preliminary injunction and vacated the TRO, it awarded her $4,260 in attorney fees and costs

---

[1] Undesignated statutory references are to the Civil Code.

pursuant to section 2924.12, former subdivision (i).[2]  The court reasoned that Bustos was a "prevailing borrower" under the HBOR because she obtained injunctive relief in the form of a TRO against her mortgage servicer—Wells Fargo Bank, N.A. (Wells Fargo).[3]  This timely appeal followed.

On appeal, Wells Fargo contends the trial court erred in interpreting section 2924.12 as authorizing an award of attorney fees and costs to a borrower who obtains a TRO enjoining a trustee's sale of his or her residence.  Wells Fargo alternatively contends that the trial court abused its discretion in awarding attorney fees and costs to Bustos under the circumstances of this case.  We note that Bustos has not filed a respondent's brief, although this does not absolve us of adjudicating the merits of Wells Fargo's appeal.  (*In re Bryce C.* (1995) 12 Cal.4th 226, 232-233; *People v. Hill* (1992) 3 Cal.4th 959, 995, fn. 3, overruled on another ground in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1178, fn. 3; see Cal. Const., art. VI, § 13.)  We shall affirm the trial court's order.

---

[2]  In 2014, section 2924.12 was amended and renumbered.  The language in former subdivision (i) was codified in subdivision (h) of section 2924.12 without substantive change.  The amended and renumbered version of the statute became operative on January 1, 2018.  (Stats. 2014, ch. 401, § 7.)  In September 2018, the Legislature, again, amended section 2924.12.  (Stats. 2018, ch. 404, § 17.)  The amendments have no impact on this appeal.

[3]  Bustos filed this action against Wells Fargo and Clear Recon Corporation (CRC), alleging three causes of action under the HBOR for violations of sections 2923.6, subdivision (c) (dual tracking), 2923.7 (single point of contact), and 2924.10, subdivision (a) (notice regarding loan modification process).  The TRO issued by the trial court prevented Wells Fargo and CRC from proceeding with the trustee's sale of Bustos's property pending a determination of her request for a preliminary injunction.  Thereafter, Bustos obtained the award of attorney fees and costs against Wells Fargo.  CRC is not a party to this appeal.

3

**1.0  Attorney Fees and Costs Under Section 2924.12**

A TRO, as an interim provisional order granting injunctive relief, is immediately appealable under Code of Civil Procedure section 904.1, subdivision (a)(6).  (*In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1576; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357.)  An order awarding attorney fees is separately appealable if made after an appealable order or judgment.  (Code Civ. Proc., § 904.1, subd. (a)(2); *DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43.)

" 'Generally, we review an award of fees and costs by the trial court for abuse of discretion.  [Citation.]  "However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747, 751 (*Monterossa*).)

In determining the proper interpretation of a statute, we begin with the statutory language.  " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.]  "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language.  [Citation.]  If, however, "the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " [Citation.]' " (*Fluor Corp. v. Superior Court* (2015) 61 Cal.4th 1175, 1198.)

" '[O]n July 2, 2012, the California Legislature passed Assembly Bill No. 278 and Senate Bill No. 900 (2011-2012 Reg. Sess.), which have since been signed into law by the Governor. These provisions address more pointedly the foreclosure crisis in our state through even greater encouragement to lenders and loan servicers to engage in good faith loan modification efforts. [¶] One of the targets of the legislation is a practice that has come to be known as "dual tracking." "Dual tracking refers to a common bank tactic. When a borrower in default seeks a loan modification, the institution often continues to pursue foreclosure at the same time." (Lazo, *Banks are foreclosing while homeowners pursue loan modifications*, L.A. Times (Apr. 14, 2011); see Sen. Floor Analyses, Conf. Rep. on Assem. Bill No. 278, as amended June 27, 2012, p. 3.) The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it. "Mortgage lenders call it 'dual tracking,' but for homeowners struggling to avoid foreclosure, it might go by another name: the double-cross." (Lazo, *Banks are foreclosing*.)' [Citation.]" (*Monterossa*, *supra*, 237 Cal.App.4th at p. 752.)

The prohibition against dual tracking is found in section 2923.6, subdivision (c), which provides in pertinent part: "If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer[,] . . . a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending."

And the prohibition against dual tracking is given teeth by section 2924.12, which provides remedies for a violation of section 2923.6 or other specified provisions of the statutory scheme. The remedies are different, depending on whether a trustee's deed upon sale has been recorded. "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." (§ 2924.12,

5

subd. (a)(1).) "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied." (§ 2924.12, subd. (a)(2).)

"After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)." (§ 2924.12, subd. (b).)

In the present case, Bustos filed an ex parte application for TRO and order to show cause regarding preliminary injunction on March 17, 2017, seeking to prevent the trustee's sale of her home, which was then scheduled for March 22, 2017. In her application, Bustos argued that injunctive relief was warranted due to several violations of the HBOR. As noted, "[a]t the heart" of her application was Wells Fargo's "blatant violation" of the HBOR's prohibition against dual tracking. On March 20, 2017, the trial court granted Bustos's request for a TRO and set a hearing on her request for a preliminary injunction. In granting the TRO, the court found that Bustos had shown that "great or irreparable injury" would result to her "before the matter [could] be heard on notice." Wells Fargo did not file a written response to Bustos's application or appear at the hearing on her request for a TRO.

6

After two stipulated continuances, the trial court denied Bustos's request for a preliminary injunction and vacated the TRO on July 13, 2017. In doing so, the court found that Bustos had failed to demonstrate that she was likely to prevail on the merits of any of her HBOR claims. On August 18, 2017, the court awarded Bustos $4,260 in attorney fees and costs pursuant to section 2924.12.[4] The court reasoned that Bustos was a prevailing borrower within the meaning of the HBOR because she obtained " 'injunctive relief' by virtue of the TRO." The court explained that a TRO is a form of injunctive relief requiring the moving party to establish both the threat of irreparable harm and "the legal basis for relief that would justify maintaining the status quo pending a full hearing," and that "if the Legislature had intended to make attorney fees and costs exclusively available to prevailing parties solely if they obtained either a preliminary or permanent injunction, they could have stated so." The court rejected Wells Fargo's argument that awarding Bustos attorney fees and costs would violate its due process rights because Bustos did not provide timely notice of her ex parte application for a TRO. The court noted that a copy of the application had been faxed to Wells Fargo three days prior to the hearing and that Wells Fargo did not argue that such notice failed to afford it a fair opportunity to oppose the application.

We find no error. The plain text of section 2924.12, subdivision (h) does not discriminate between the different types of injunctive relief—i.e., temporary, preliminary, or permanent. As we have indicated, the statute provides, "A court may award a prevailing borrower reasonable attorney's fees and costs . . . . A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief . . . ." (§ 2924.12, subd. (h).) This court held that the "injunctive relief" referred to in the statute "plainly incorporates both preliminary and permanent injunctive

---

[4] In her motion, Bustos requested an award of attorney fees and costs in the amount of $10,800. The trial court found her request unreasonable. It determined that an award of $4,200 in attorney fees and $60 in costs was appropriate.

7

relief." (*Monterossa*, *supra*, 237 Cal.App.4th at p. 753.) In so holding, we rejected the trial court's interpretation of the statute; namely, "that the phrase 'prevailing borrower . . . in an action' suggests the Legislature intended for an award of attorney fees and costs solely at the conclusion of the action, i.e., after a judgment issuing a permanent injunction." (*Id.* at pp. 753-754.) We explained that "a preliminary injunction is obtained 'in an action.' And a borrower who obtains a preliminary injunction has prevailed in obtaining 'injunctive relief.' Thus, the plain language of . . . section 2924.12 provides for attorney fees and costs to a borrower who obtains a preliminary injunction." (*Id.* at p. 754.)

In *Monterossa*, we went on to conclude that, even assuming the phrase "prevailing borrower . . . in an action" created an ambiguity as to whether the Legislature intended to authorize attorney fees and costs when a preliminary injunction is issued, "the language and purpose of the statutory scheme, and its legislative history, demonstrate the Legislature intended to authorize an award of attorney fees and costs when a preliminary injunction issues." (*Monterossa*, *supra*, 237 Cal.App.4th at p. 754.) In reaching this conclusion, we reasoned as follows:

"Under this unique statutory scheme, in many cases the best a plaintiff can hope to achieve is a preliminary injunction. 'In deciding whether to issue a preliminary injunction, a trial court weighs two interrelated factors: the likelihood the moving party ultimately will prevail on the merits, and the relative interim harm to the parties from the issuance or nonissuance of the injunction.' [Citation.] Where the trial court has found the plaintiff is likely to prevail on the claim of a 'material violation' of one of the provisions enumerated in subdivision (a)(1) of section 2924.12, and accordingly has issued a preliminary injunction, the 'mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent' can expeditiously correct and remedy the violation giving rise to the action for injunctive relief and then move to dissolve the preliminary injunction pursuant to subdivision (a)(2) of section 2924.12. This compliance with the statutory scheme

8

would consequently moot the borrower's request for a permanent injunction. But, given that the borrower has effectively prevailed in the action by obtaining a preliminary injunction forcing compliance with the statute, the Legislature must have intended to authorize an award of attorney fees and costs when a trial court issues a preliminary injunction pursuant to [former] subdivision (i) of section 2924.12.

"As an example, in this case the respondent court found petitioners' showing to be undisputed that real parties in interest 'dual tracked' petitioners in violation of section 2923.6 by recording a notice of trustee's sale while petitioners' first lien loan modification application was pending. Rather than wait for trial on petitioners' claim for a permanent injunction, real parties in interest could simply comply with the statutory scheme and then, if necessary, move to dissolve the preliminary injunction in order to record a new notice of trustee's sale. That is, real parties in interest could provide petitioners with a written determination regarding the loan modification application (§ 2923.6, subd. (c)), and if a loan modification is granted, wait 14 days for petitioners to decide whether to accept it (§ 2923.6, subd. (c)(2)). If loan modification is denied, real parties in interest would wait 31 days to determine if petitioners appealed, and if they did, wait another 15 days if the appeal was denied. (§ 2923.6, subds. (d) & (e).) The short time periods set out in the statutory scheme suggest the Legislature's understanding that a prevailing borrower's preliminary injunctive victory may often be short-lived and subject to dissolution upon compliance with the statutory scheme's procedural requirements.

"Our interpretation of the statute as authorizing attorney fees and costs when a borrower obtains a preliminary injunction is further supported by the purpose of the statutory scheme, set out in section 2923.4, subdivision (a): 'The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added

9

this section, however, shall be interpreted to require a particular result of that process.' In enacting the statutory scheme, the Legislature mandated a process for fair consideration of options other than foreclosure. As we have explained, when a lender fails to comply with that process, the borrower prevails by obtaining a preliminary injunction requiring the lender to comply with the process. After correcting the error, the lender may move to dissolve the preliminary injunction, and in such cases, there will be no need for a trial regarding a permanent injunction. The Legislature's purpose is fulfilled by providing attorney fees and costs to a borrower who successfully forces the lender to comply with the statutory process by obtaining a preliminary injunction.

"Finally, the legislative history demonstrates unequivocally that the Legislature intended to authorize an award of attorney fees and costs when a trial court grants a preliminary injunction as a result of a lender's violation of sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17. As explained in the July 2, 2012 Senate Rules Committee's 'Conference Report No. 1' regarding Senate Bill No. 900 (2011-2012 Reg. Sess.), as amended June 27, 2012, page 29: 'Importantly, no action for money damages would be allowed until the date the trustee's deed is recorded after a foreclosure sale. At all times until then, the only legal remedy a homeowner may seek is an action to enjoin a substantial violation of the specified sections, along with any trustee's sale. *When a court considers a request for injunctive relief it must determine whether there is convincing evidence of harm if the injunction is not granted. The court will also consider if the borrower has a likelihood of prevailing on the merits.* As part of that consideration, no legal action would be permissible if brought in bad faith or intended merely for the purpose of unnecessary delay, and *no injunctive relief could be awarded unless the homeowner could show a likelihood of prevailing on the merits in relation to the balance of harms. Any such injunction is to be dissolved if the moving party shows that the violation has been redressed.* No special pre-litigation procedures or particular allegations are required by the amendments, whether or not the sale is pending.

Conversely, the servicer or other covered entity may avoid legal action by curing the violation any time prior to recordation of a trustee's deed. This right to cure is not unprecedented in comparable circumstances where the parties are known to each other and have an established relationship of ongoing communication. Equivalent provisions may be found in . . . Section 910 et seq. and Labor Code Section 2698 et seq. *If it is necessary to order injunctive relief, a party who obtains an injunction is among those who is recognized as a prevailing party for the purposes of attorney's fees and costs. As with the vindication of other important statutory rights, an award of attorney's fees and costs is to be decided by the court.* (See, e.g., Code of Civil Procedure Section 1021.5; Government Code Section 12965; . . . Section 52.1.)' (Italics added.) Thus, the Legislature understood that the intent of the statutory scheme was to permit a trial court to award attorney fees and costs to a borrower who prevails in obtaining a preliminary injunction." (*Monterossa*, *supra*, 237 Cal.App.4th at pp. 754-756, fn. omitted.)

We conclude that a borrower who obtains a TRO enjoining the trustee's sale of his or her home is a "prevailing borrower" within the meaning of section 2924.12, subdivision (h), and therefore may recover attorney fees and costs. The text of the statute refers to "injunctive relief," which plainly includes a TRO. The statute makes no exception for temporary injunctions. Thus, under the plain language of the statute, a trial court is authorized, in its discretion, to award attorney fees and costs to such a borrower. (See *Hardie v. Nationstar Mortgage LLC* (2019) 32 Cal.App.5th 714, 718, 720, 723 (*Hardie*).)

Wells Fargo does not argue that the statutory language of section 2924.12, subdivision (h) is ambiguous. Nor has it pointed to any language in the statutory scheme or its legislative history demonstrating that the Legislature did not intend to authorize an award of attorney fees and costs when a borrower obtains a TRO but does not obtain a preliminary or permanent injunction. Indeed, our reasoning in *Monterossa* regarding the statutory scheme and its purpose, which we found supported the conclusion that

11

injunctive relief under the HBOR includes preliminary injunctions, applies equally to temporary injunctions. As we explained in *Monterossa*, interim injunctive relief is often "the best a plaintiff can hope to achieve" under the HBOR. (*Monterossa*, *supra*, 237 Cal.App.4th at p. 754.) Like a preliminary injunction, a TRO affords the " 'mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent' " an opportunity to "expeditiously correct and remedy the violation giving rise to the action for injunctive relief," and thereby may moot the need for further injunctive relief. (*Ibid*.) This is particularly true where, as here, the TRO remains in place for several months by stipulation of the parties. "Under such circumstances, the borrower may successfully force compliance with the required statutory processes without obtaining a preliminary or permanent injunction. It would be contrary to the HBOR's purpose and the Legislature's intent to conclude a borrower who obtained such relief had not prevailed within the meaning of section 2924.12." (*Hardie*, *supra*, 32 Cal.App.5th at p. 724.)

Wells Fargo acknowledges that the trial court relied on a federal district court case in determining that a borrower who obtains a TRO enjoining the trustee's sale of his or her home is a "prevailing borrower" within the meaning of section 2924.12, *Lac v. Nationstar Mortgage LLC* (E.D. Cal., July 26, 2016, No. 2:15-cv-00523-KJM-AC (temp)) 2016 U.S.Dist. Lexis 98250 (*Lac*), but makes no effort to explain why the legislative history discussed in that case does not support the conclusion that "injunctive relief" under section 2924.12 includes a TRO. (See *Lac, supra,* at pp. *7-12 [citing Legislative history indicating that the Legislature considered whether section 2924.12 should cover "any injunction" or whether it should narrow coverage by specifying one or two types of injunctive relief, and that the statute was meant to authorize an award of attorney fees and costs to borrower who obtained a temporary or preliminary injunction].) Moreover, Wells Fargo does not cite any Legislative history supporting a different result.

We reject Wells Fargo's contention that allowing an award of fees when the plaintiff obtains an ex parte TRO deprives a defendant of property without due process of

law. Section 2924.12, subdivision (h) merely authorizes a trial court to award attorney fees and costs to a prevailing borrower. Such an award is discretionary, not mandatory. Wells Fargo concedes that Bustos's "fee motion . . . was statutorily noticed" but argues that "this mattered not, since the sole basis for the fee award—the prior grant of an ex parte TRO—came into being without the meaningful opportunity afforded by statutory notice for [it] to be heard." We disagree. In opposing Bustos's motion for attorney fees and costs, Wells Fargo had the opportunity to make the same arguments it now raises on appeal.[5] "By permitting, rather than requiring a court to award attorney's fees, section 2924.12 allows courts to avoid awards that would be inequitable or unconstitutional. The ex parte nature of the proceedings, the relative merits of the TRO application, and a party's ultimate ability to obtain statutory compliance through imposition of an injunction are relevant factors the court may consider in determining whether to award fees." (*Hardie*, *supra*, 32 Cal.App.5th at pp. 724-725, fn. omitted.)

The rule proposed by Wells Fargo, which would prohibit an award of attorney fees and costs under the HBOR unless a borrower forces compliance with the statute, is a policy decision reserved to the Legislature. Section 2924.12, subdivision (h) imposes no such requirement, and we do not have authority to question the Legislature's policy choices or contravene its directives. (*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 992, citing *Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 455 ["it is no part of the duty of this court to determine whether the policy embodied in the statute is wise or unwise"].) The Legislature chose to allow a trial court, in its discretion, to decide whether an award of attorney fees and costs is warranted when a borrower obtains

---

[5] As we noted above, the trial court's tentative ruling on Bustos's motion rejected Wells Fargo's contention that it did not receive sufficient notice of the ex parte application for TRO to afford it a fair opportunity to oppose the request for a TRO. At the hearing on the motion, Wells Fargo conceded that it was provided notice of the application in "compliance with the rules," i.e., the California Rules of Court.

13

injunctive relief under the HBOR, including a TRO or preliminary injunction.  As we noted above, among the relevant factors a trial court may consider in making this determination are the type of injunctive relief obtained by the borrower and whether the borrower forced compliance with the HBOR.  (*Hardie, supra*, 32 Cal.App.5th at p. 725.)

In declining to adopt Wells Fargo's proposed rule, we recognize that TROs differ from preliminary injunctions in significant respects.  A TRO may be issued ex parte with little notice and does not require a full evidentiary hearing giving each party the opportunity to present arguments and evidence.  Further, the issuance of a TRO does not necessarily involve an evaluation of the merits of the underlying dispute, does not require the plaintiff to post a bond pending final resolution of the case, and is generally of short duration.  (*Hardie*, *supra*, 32 Cal.App.5th at p. 724; see 6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, § 284, p. 225.)  However, section 2924.12, subdivision (h) refers to injunctive relief broadly without making any distinction whether the relief is temporary, preliminary, or permanent.  While the differences between a TRO and a preliminary injunction may provide "sound policy reasons for prohibiting attorney's fees on a TRO application, such determinations are reserved to the Legislature."  (*Hardie*, *supra*, at p. 724; see *id*. at p. 724, fn. 5 [finding that same reasoning applies to argument claiming that allowing fee recovery for successful TRO applications encourages meritless filings brought solely for the purpose of delay; explaining that it is for the Legislature to determine whether this risk overrides other reasoned policy considerations].)

Finally, we note that Wells Fargo cites various state and federal cases in support of its contention that obtaining a TRO without forcing compliance with the HBOR is insufficient to confer "prevailing borrower" status under section 2924.12, subdivision (h).  Wells Fargo's reliance on these cases is misplaced.  None of the cases interpret the meaning of "prevailing borrower" for purposes of an award of attorney fees and costs under section 2924.12, subdivision (h).  Moreover, none of the cases involve statutory language specifically authorizing attorney fees and costs to a party who obtains

14

"injunctive relief."  (See, e.g., *Pasadena Police Officers Assn. v. City of Pasadena* (2018) 22 Cal.App.5th 147, 167-171 [interpreting the meaning of "prevailing party" for purposes of a fee award under the Public Records Act, Government Code section 6259]; *Higher Taste v. City of Tacoma* (9th Cir. 2013) 717 F.3d  712, 715-718 [interpreting the meaning of "prevailing party" for purposes of a fee award under 42 U.S.C. § 1988]; *Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1082-1086 [interpreting the meaning of "successful party" for purposes of a fee award under California's private attorney general statute, Code of Civil Procedure § 1021.5].)

## 2.0     The Trial Court Did Not Abuse Its Discretion

Wells Fargo alternatively contends that the trial court abused its discretion in awarding Bustos attorney fees and costs because it failed to correctly weigh the significance of Bustos's failure to successfully force compliance with any provision of the HBOR.  We disagree.

" ' "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" [Citation.]  "A decision will not be reversed merely because reasonable people might disagree.  'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.]  In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." [Citation.]' [Citation.]  Accordingly, an abuse of discretion transpires if ' "the trial court exceeded the bounds of reason" ' in making its award of attorney fees.  [Citation.]" (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249-1250.)

In its written opposition to Bustos's motion for attorney fees and costs, Wells Fargo did not argue that granting the motion would constitute an abuse of discretion

15

under the circumstances of this case. However, at the hearing on the motion, Wells Fargo complained that the tentative ruling provided "no discussion . . . as to whether or not the exercise of discretion to award fees was warranted in this particular case." In response, the trial court stated that Wells Fargo had not shown that it "couldn't have mounted an opposition to the TRO." The court noted that Wells Fargo was provided notice of Bustos's ex parte application for a TRO, and "could have come in [to court] and said, no, let's continue this for a few days, let's see what we have before we allow this to go forward." The court further noted that if Wells Fargo had appeared at the hearing and indicated it had evidence supporting the denial of injunctive relief, such conduct would have affected and informed its discretion regarding the award of attorney fees and costs. After admitting that Bustos had provided proper notice of her ex parte application for a TRO, Wells Fargo argued that awarding attorney fees and costs would be an inequitable result and amount to a "penalty" or "sanction" because no violation of the HBOR had occurred. Wells Fargo, however, conceded that it could have postponed the foreclosure sale until after a decision was made on Bustos's loan modification application, and did not dispute Bustos's contention that it refused her request to postpone the foreclosure sale prior to the filing of the ex parte application for a TRO. At the conclusion of the hearing, the trial court indicated that it had exercised its discretion in granting Bustos's motion but stated that it would take the matter under submission and review the entire case to address Wells Fargo's concern about whether it had exercised its discretion. In doing so, the court acknowledged that attorney fees are not "automatically given" under the HBOR, and that an award of attorney fees may be denied even if injunctive relief is granted. The court subsequently issued a written order adopting the tentative ruling as the final ruling of the court.

On this record, we find no abuse of discretion. The record discloses that the trial court was aware of its discretion to award attorney fees and costs. The record further discloses that the court's exercise of discretion was informed by the fact that Wells Fargo

16

could have postponed the foreclosure sale until after a decision was made on Bustos's loan modification application, Wells Fargo received proper notice of the ex parte application for a TRO but did not appear at the TRO hearing and assert that it had evidence establishing the HBOR claims lacked merit, the TRO remained in place for several months due to stipulated continuances, Bustos's request for a preliminary injunction was denied, and Bustos did not force compliance with any provision of the HBOR.  Wells Fargo has not met its burden to show that the trial court's decision to award Bustos attorney fees and costs exceeded the bounds of reason.  There has been no clear showing that the decision was arbitrary or irrational.

In a supplemental letter brief, Wells Fargo argues that the trial court abused its discretion because it failed to consider the relevant factors identified by *Hardie* in awarding Bustos attorney fees and costs.[6]  We disagree.  As an initial matter, we note that *Hardie* was decided after the trial court's ruling and does not set forth a list of mandatory factors a trial court must consider in determining whether a fee award is appropriate under section 2924.12, subdivision (h).  Rather, the *Hardie* court identified three "relevant factors" a court *may* consider in making such a determination when a borrower prevails in obtaining a TRO.  (See *Hardie*, *supra*, 32 Cal.App.5th at pp. 724-725.)  In any event, the record reflects that the trial court did in fact consider the factors identified by *Hardie*, including the ex parte nature of the proceedings, the relative merits of Bustos's TRO application, and Bustos's ultimate inability to obtain statutory compliance with the HBOR through imposition of an injunction.  (See *ibid*.)

We reject Wells Fargo's contention that *Hardie* holds or even suggests that a fee award under section 2924.12, subdivision (h) is an abuse of discretion as a matter of law where a borrower obtains a TRO on an ex parte basis but fails to (1) "force compliance

---

[6] Because *Hardie* was decided after appellate briefing in this case was completed, we granted Wells Fargo's request to file a supplemental letter brief to address the new decisional authority.

17

with the statutory process through the ex parte TRO," (2) obtain a preliminary injunction due to their inability to establish a reasonable probability of prevailing on the merits, or (3) prevail on their HBOR claim at trial. *Hardie* does not clarify, as Wells Fargo contends, that a fee award based solely on a successful ex parte application for a TRO constitutes an abuse of discretion. Instead, *Hardie* holds that, because a TRO is "indisputably" a form of injunctive relief, the plain language of section 2924.12, subdivision (h) authorizes a trial court, in its discretion, to award attorney fees and costs to a borrower who prevails in obtaining such relief.[7] (*Hardie*, *supra*, 32 Cal.App.5th at pp. 723-725.) In so holding, the *Hardie* court recognized that TROs are temporary in nature and differ from preliminary injunctions in "significant respects" (*id.* at p. 724) but explained that the discretionary nature of a fee award under the statute "allows courts to avoid awards that would be inequitable or unconstitutional" (*id.* at pp. 724-725). As noted above, the court went on to identify three relevant factors a court *may* consider in determining whether a fee award is appropriate when a borrower prevails in obtaining a TRO. (*Ibid.*) Nothing in *Hardie* convinces us that the trial court abused its discretion under the circumstances of this case.

---

[7] We note that Wells Fargo does not argue that *Hardie* was wrongly decided. At the outset of oral argument, Wells Fargo's counsel—"for purposes of this argument"—conceded that a TRO is a form of injunctive relief pursuant to the statute, as held in *Hardie*.

## DISPOSITION

The trial court's order awarding attorney fees and costs to Bustos is affirmed. Because Bustos did not file a brief or otherwise make an appearance, no costs are awarded on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/S/

_____

BUTZ, Acting P. J.

I concur:

/S/

_____

DUARTE, J.

19

Renner, J., Concurrence.

I concur in the disposition, but write separately to emphasize that *Monterossa v. Superior Court* (2015) 237 Cal.App.4th 747 (*Monterrosa*) dealt with a preliminary injunction, rather than a temporary restraining order.  Our reliance on the reasoning in *Monterrosa* should not obscure the significant procedural and substantive differences between these two distinct forms of injunctive relief.  The majority opinion is, however, correct that the language of Civil Code section 2924.12 is fairly read to include temporary restraining orders as a form of injunctive relief.  (Maj. opn. *ante*, at p. 14.)  And I agree the record does not support a finding that the trial court abused its discretion in awarding attorney's fees to the homeowner in this case.  (Maj. opn. *ante*, at pp. 17-18.)


/S/

_____
RENNER, J.

1